**PARRISH v. UNITED STATES.**
Civ. No. 249.

United States District Court
M. D. Georgia, Valdosta Division.
Dec. 30, 1950.

Odum & Young, of Valdosta, Ga. and J. Bowie Gray, of Tifton, Ga., for plaintiff.

T. Resse Watkins and J. J. Gautier, Asst. U. S. Attys., Macon, Ga., for the United States.

CONGER, District Judge.

### Findings of Fact

The facts disclosed by the evidence upon the trial of this case are as follows:

About six o'clock p. m., on December 19, 1948, Horace R. Pierce, a sergeant in the United States Army, stationed at Florida Military District, Jacksonville, Florida, while driving an Army truck was proceeding south through Tifton, Georgia, on Main Street, approaching its intersection with Fifth Street. Traffic at the intersection was controlled by an automatic light signal suspended over the center of the intersection which was burning red, against traffic proceeding on Main Street, when Pierce arrived at the intersection. He completely stopped the Army vehicle in obedience to the signal and held out his hand, indicating his intention to make a left turn into Fifth Street. An unidentified automobile, proceeding north on Main Street had stopped opposite Sergeant Pierce at the intersection. When the traffic signal changed to green, thus permitting vehicles traveling on Main Street to proceed through the intersection, Sergeant Pierce, continuing to extend his left hand as a signal to indicate his intention to make a left turn in the intersection, placed the Army vehicle in low gear and proceeded at a very slow rate of speed straight forward into the intersection. He stopped in the intersection in order to permit the unidentified vehicle which had stopped opposite him to proceed north through the intersection and clear his vehicle. When the unidentified vehicle had cleared the intersection Sergeant Pierce proceeded slowly to make a left turn into Fifth Street so as to proceed eastward to Jacksonville, Florida. When Pierce had almost completed his left turn into Fifth Street, the left portion of the front bumper of the Army truck was struck by the plaintiff's bicycle, powered by a motor attached thereto, commonly known as a "whizzer-bike". The Army vehicle was stopped in-

stantly at the moment of impact. Prior to the moment of the collision, the plaintiff, operating his bike alone, was proceeding north on Main Street, approaching its intersection with Fifth Street, and meeting the Army vehicle. On the date of the collision sunset occurred at 5:35 p. m., approximately twenty-five minutes before the collision. The plaintiff's bike was not equipped with any headlights or other night signal devices. Street lights in the City of Tifton, Georgia, were burning at the time of the collision and the headlamps on the Army truck were also lighted. Other vehicles using the streets at that time had headlights burning either dim or bright and, while the evidence is in conflict on the point, I find that some vehicles using the streets in the vicinity at that time did not have headlamps burning at the time of the collision. The plaintiff, in approaching the intersection, saw the Army vehicle making a left turn therein ahead of him and waved to the driver thereof in an attempt to make him stop so that he (the plaintiff) could proceed safely through the intersection. The plaintiff "assumed" that he had the right of way at the intersection, although the Army vehicle had entered the intersection and was making a left turn therein ahead of him. Sergeant Pierce did not see the plaintiff or his motorbike until the moment of impact. There is no evidence of a valid ordinance of the City of Tifton, Georgia, and there is no statute, fixing the relative rights of the driver of the Army truck and the plaintiff at the intersection under the circumstances disclosed by the facts in this case. Plaintiff made no effort to stop his vehicle, although he was traveling at a speed no greater than eight miles per hour, and the collision ensued; whereupon, plaintiff was thrown to the ground and as a result of the impact sustained a fracture of his left leg at the knee joint. He sues in this action to recover damages for the personal injury thus sustained by him.

The facts disclosing the nature of the mission upon which Sergeant Pierce was engaged at the time of the collision are as follows:

On December 17, 1948, Colonel Carlisle B. Cox, an Army officer, who was assigned to duty at Headquarters, Florida Military District, Jacksonville, Florida, approached Sergeant Pierce, who was also stationed at such Headquarters, and requested the Sergeant to haul certain items of his household belongings and other personal property from Jacksonville to Colonel Cox's home near Canton, Georgia. Pierce was off duty on weekends and agreed to make the trip. December 18th and 19th fell on Saturday and Sunday, respectively. Canton is approximately four hundred miles north of Jacksonville. No orders had been received by Colonel Cox at that time requiring him to transfer from his post of duty at Jacksonville, Florida, to any other place of duty. Colonel Cox at the time the trip was made was obliged to move from a house, which he had been renting, into a small apartment which did not provide sufficient space for storing the household belongings which he arranged for Sergeant Pierce to haul to his home place near Canton, Georgia. Colonel Cox agreed to pay per diem and all the expenses which might be incurred by Sergeant Pierce in making the trip to Canton and agreed to meet Pierce at a hotel in Canton upon his arrival there so as to direct him to the home place where he desired his furnishings to be stored. After Colonel Cox had made these arrangements the Commanding Officer of Headquarters, Florida Military District, being the Commanding Officer of both Colonel Cox and Sergeant Pierce, with full knowledge of the facts concerning the proposed trip to Canton, Georgia, authorized the issuance of the following order on December 17, 1948: "Sgt 1cl Horace R. Pierce RA 34400516 ASU 3359 Fla ORC Instrs this Sta WP o/a 18 Dec 48 to Canton Ga for purpose transporting household furniture of Colonel Carlisle B Cox 05798. Per diem not authzd. Operating expenses incident to use of Govt vehicle, subs and qrs of Sgt 1cl Pierce will be paid by Colonel Cox. Upon compl return proper sta. No additional expense to the Govt will be incurred under the provisions of these orders. TDN. TBGAA." With this order Sergeant Pierce procured the Army vehicle in question from the motor pool of Headquarters, Florida Military

District. At Colonel Cox's instructions, Sergeant Pierce, after obtaining the Army truck in question, had it filled with gas and oil and upon his return to Jacksonville from Canton, Pierce re-filled the truck with gas and oil in accordance with his instructions from Colonel Cox. All gasoline and oil purchased during the trip was paid for by Sergeant Pierce out of money advanced to him by Colonel Cox. Under these circumstances the Army truck was loaded with Colonel Cox's personal belongings and hauled to Canton, Georgia, by Sergeant Pierce. Colonel Cox met the Sergeant at Canton and directed him to his (Colonel Cox's home which is located in a rural area a few miles distant from the City of Canton, Georgia. There the furniture and other personal belongings of Colonel Cox were unloaded from the Army truck and thereafter Sergeant Pierce proceeded back toward Jacksonville, Florida. It was during his return trip that Sergeant Pierce become involved in the collision with the plaintiff's motor-bike at Tifton, Georgia. Throughout the entire course of the trip Sergeant Pierce was subject to the orders, direction and control of Colonel Carlisle B. Cox. Sergeant Pierce's entire expense in making the trip was borne by Colonel Carlisle B. Cox personally. No Government property or personnel were hauled in the truck by Sergeant Pierce on the occasion in question, he being the only occupant thereof during the course of the trip.

## Conclusions of Law

1. The use of the Army vehicle for the sole purpose of transporting the personal property of Colonel Carlisle B. Cox on the occasion in question was wholly unauthorized and contrary to the provisions of paragraph 26(c) and paragraph 26(f) of Army Regulations 700–105, June 30, 1948, which were in full force and effect at the time of the accident in question, and completely binding upon all military personnel having any connection whatsoever with such truck.

2. The mission on which Sergeant Horace R. Pierce was engaged at the time of the collision giving rise to this claim was one which Sergeant Pierce was performing solely for the benefit and personal convenience of Colonel Carlisle B. Cox, and was not, under the circumstances, in furtherance of the interests of the Government.

3. The order which the Commanding Officer, Headquarters, Florida Military District, authorized to be issued on December 17, 1948, purporting to authorize use of an Army vehicle on a personal mission for Colonel Carlisle B. Cox, is illegal upon its face and in no way obscures the unauthorized character of the use to which the Army vehicle was put in making the trip in question.

4. ■ In voluntarily driving the Army vehicle from Jacksonville, Florida, to Canton, Georgia, and return, for the purpose of hauling the personal belongings of Colonel Carlisle B. Cox, Sergeant Horace R. Pierce was not "acting within the scope of his office or employment" as an "employee of the Government", as contemplated by the provisions of the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671, and the plaintiff's claim should accordingly be denied.

5. ■ The question of right of way as between the two motor vehicle operators involved in this collision is one of fact, and it cannot be said as a matter of law that the plaintiff had the right of way over the driver of the Army truck under the circumstances of this case.

6. ■ The collision and resulting personal injuries sustained by the plaintiff for which damages are sought against the Government in this action were caused by the negligence of the plaintiff in operating his motor-bike under the conditions prevailing at the intersection where the accident occurred, without any headlights thereon and in entering the intersection after the driver of the Army vehicle started making a left turn therein and with knowledge that such left turn would be and was in fact being made before he entered the intersection. The plaintiff was further guilty of negligence which proximately caused the collision and resulting injuries he sustained in failing to stop his vehicle before he crashed into the front end of the Army truck. The collision and resulting damage was not caused in whole or in part

by any negligent act or omission on the part of the driver of the Army truck. Plaintiff's claim should accordingly be denied for this reason.

Let the United States Attorney present a judgment for entry by the Court in accordance with these findings of fact and conclusions of law.