WILLIAMS v. UNITED STATES.

No. 28870-E.

United States District Court
N. D. California, S. D.

June 4, 1952.

Henry C. Clausen, San Francisco, Cal., for plaintiff.

Chauncey Tramutolo, U. S. Atty., Rudolph J. Scholz, Asst. U. S. Atty., both of San Francisco, Cal., for defendant.

ROCHE, Chief Judge.

Plaintiff has brought this action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 et seq., to recover damages for injuries sustained through the negligence of an intoxicated soldier. The negligence and plaintiff's injuries are not disputed by the defendant. The sole question for decision is whether the soldier was acting within the course and scope of his employment within the purview of the Tort Claims Act. Its determination requires a careful examination of the facts, as disclosed by the record. From the evidence of defendant's witnesses, all of whom testified by deposition, the following facts appear.

The accident occurred on the evening of March 3, 1949, on the island of Guam. Plaintiff was sitting in a vehicle which was parked at the end of the Breakwater road at the little town of Agana when it was struck by a weapons carrier driven by one Seabourn, a Corporal in the United States Army. Seabourn's regular duties were as clerk in supply. He testified that he did not work on the day in question but had taken time off and stayed around his base until about noon, when he left on a pass with Cpl. Benson and Pvt. Schmidt of his company. After spending the afternoon drinking beer they returned to the base about seven p. m. and Seabourn picked up a trip ticket for the weapons carrier. (A trip ticket is authorization from a unit Commander to use a particular vehicle on official business.) Accompanied by Benson and Schmidt, he drove to the Enlisted Men's Club, where they indulged in champagne as well as beer, and then decided to take a ride.

At some time prior to the accident, Seabourn let both friends out of the vehicle and he testified that that was the last he remembered until the following morning when he awoke beside the road.

A certified copy of the trip ticket was introduced in evidence. It shows that it was made out to one Cabrera, at the request of Lt. Werb, for official business and was good for 24 hours. It further shows that the vehicle was attached to the 374th Maintenance Unit; that it was dispatched from the Motor Pool, and was scheduled to go to various official places. Seabourn testified that he picked up the trip ticket from Sgt. Stiles of his company; that it was common practice for trip tickets to be passed around among the men working in that section, regardless of the name of the person to whom the ticket had issued; and that this was so whether the vehicle was to be used on official business or for recreation. Schmidt testified that once a vehicle had a trip ticket, it could be used for either official business or recreation.

On the other hand, Sgt. Stiles stated that the vehicle was to be used for official business only; that because the maintenance unit was on duty twenty-four hours a day the vehicle was on 24 hours dispatch and was used officially by all men in the section who had permits; that it was good on the post only.

█ Even assuming that the practice testified to by Seabourn and Schmidt was known and permitted by the officers in charge, it would not make the United States liable. The sovereign cannot be sued without its consent. By the Tort Claims Act the United States has consented to be sued for the negligence of its employees only when they are acting within the scope of their employment which, in the case of military personnel, means acting in line of duty. To determine whether the person inflicting the injury was an employee so acting, we look to Federal law and decisions. Local law is looked to only to determine whether the act with which the person is charged gives rise to a tort liability. United States v. Sharpe, 4 Cir., 189 F.2d 239. So-called "permissive use" statutes are thus inapplicable and liability cannot be imposed on the United States for negligence of an employee acting outside the scope of his employment, even though the employee's activity has the express or implied permission of the sovereign's agents. Long v. United States, D.C., 78 F.Supp. 35.

Plaintiff argues that Seabourn was acting within the scope of his employment because he was seeking entertainment; that entertainment is essential to a soldier's morale; and that proper morale is necessary to the maintenance of efficiency in the armed forces. To support her position plaintiff relies on a recent Ninth Circuit case, Murphey v. United States, 179 F.2d 743, in which, by a two to one decision, the Court of Appeals reversed a District Court judgment in favor of the United States. This decision, of course, is binding on this court if the facts in the instant case fall within its framework. Unfortunately; there is one essential difference which forces the court to conclude that plaintiff's action must fail.

In the Murphey case a soldier negligently drove an army vehicle onto a narrow bridge in the face of an oncoming group of pedestrians, thereby causing one of them to fall to her death. There, as here, the sole question was whether the soldier was acting within the scope of his employment at the time. In holding that he was, the two-judge majority relied on the following facts. Twenty Air Corps soldiers staffed a radar post about three miles from the small town of Klamath, Oregon, which was their only available source of entertainment. Under the authority of the commanding officer pursuant to Army Regulations 700–105(28), a truck was provided for nightly visits to Klamath for the men's entertainment. The pertinent Regulation provides that Army vehicles may be used by special direction of the Commanding Officer for transporting personnel in connection with authorized, organized and supervised recreational welfare and morale building activities. Once the men reached Klamath the truck was to be parked by a certain

building and left there until time for the return trip. On the night in question this was not done. Instead, the driver, accompanied by another soldier, used it to drive to an Indian ceremonial dance being held two or three blocks from the center of town. The accident happened while they were en route. The District Court was reversed on the ground that the driver's recreational use of the truck for himself, after bringing the other soldiers into town, was a military employment because it was as important to the United States to maintain the morale of one soldier as of many and the Indian ceremonial would fall within the class of "authorized * * * recreational activities" as certainly as would motion picture shows or dances. The court cautioned, however, that it was here concerned only with specifically allowed amusements and that its decision did not mean that "in any case where the soldier is on a frolic of his own he can make the government liable simply because he there found entertainment."

■ Clearly in the present case Seabourn was on a frolic of his own. His use of the weapons carrier was not for the purpose of transporting personnel, under the special direction of his Commanding Officer, for any purpose authorized by the Regulation, nor was it incidental to such use. On the contrary, he used it as he might his private automobile in seeking personal entertainment. This was a use contrary to the express purpose of the trip ticket and one not authorized by any of his superior officers. To hold that in so doing he was acting within the scope of his military employment would be an unwarranted extension of the term for which even the liberal construction in the Murphey case would not be authority.

In accordance with the foregoing, therefore, it is by the court

Ordered that there be entered herein, upon findings of fact and conclusions of law, judgment in favor of the defendant and that the respective parties bear their own costs.