**Agnes Kelly O'TOOLE, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 73, Docket 25378.**

United States Court of Appeals
Second Circuit.

Argued Nov. 3, 1960.

Decided Dec. 2, 1960.

C. Joseph Danahy, Brooklyn, N. Y. (Bernard E Perelson, Brooklyn, N. Y., on the brief), for plaintiff-appellant.

Cornelius W. Wickersham, Jr., U. S. Atty. for Eastern District of New York, Brooklyn, N. Y. (Margaret E. Millus, Asst. U. S. Atty., Brooklyn, N. Y., on the brief), for defendant-appellee.

Before SWAN, CLARK and MEDINA, Circuit Judges.

MEDINA, Circuit Judge.

In the early hours of the morning of January 6, 1951 plaintiff was seriously injured when a government-owned automobile operated by Andrew Cunningham, an investigator assigned to the Alcohol and Tobacco Tax Unit of the Internal Revenue Service, left the highway, ran up on the sidewalk and struck a wooden telephone pole. Cunningham was pronounced dead on arrival at a hospital. The accident happened as he was driving plaintiff to her home after an evening spent visiting a number of bars and drinking beer. The trial judge found that the accident was caused by Cunningham's negligence, that he was intoxicated, and that plaintiff was guilty of contributory negligence and assumed the risk of driving with him "in his inebriated condition." The complaint was dismissed and plaintiff has appealed.

We do not find it necessary to consider the question of contributory negligence or assumption of risk. The principal contentions advanced by appellant are:

(1) That the trial judge erroneously applied the New York law; and

(2) That, in any event, any finding of substantial evidence to rebut the presumption arising out of Section 59 of the New York Vehicle and Traffic Law must rest on the testimony of the witness Walter Carroll, and that his testimony should not have been received because the government did not produce him as a witness in response to the demand served in connection with the taking of depositions before trial.

Cunningham and Theodore C. Daners, another agent of the Alcohol and Tobacco Tax Unit, were sent to participate in the raid of a still in Liberty, New York. They returned on January 5, 1951, and reported to their supervisor, Walter Carroll, at the Manhattan office of the Unit about 2:00 P.M., bringing the baggage they had used on the trip to Liberty, which was heavy and bulky. This was a Friday. They received their pay checks and, according to the finding of the trial judge, based on Carroll's testimony, Carroll granted Cunningham's request to borrow the government-owned automobile, later involved in the accident, for the sole purpose of taking his baggage to his home, about a 25–30 minute drive from the government garage. "This permission was granted upon the explicit and specified stipulation * * * that the car be returned to the government garage by 6:00 P.M. on January 5, 1951, immediately after depositing the luggage at Cunningham's home." (Finding No. 10.)

Instead of going home, Cunningham proceeded to visit a few bars and he was at Deviney's Bar in Astoria when he was joined by appellant and some other friends at about 6:30 P.M. The rest of the evening was spent going from one bar and grill to another, drinking and "socializing," until Cunningham and appellant finally left the Canary Cage Bar and Grill in Corona shortly before the accident.

It is suggested that perhaps Cunningham was for at least part of the time engaged on official government business. But the testimony of the various bartenders and that of other witnesses con-

cerning the activities of appellant and Cunningham demonstrates beyond shadow of doubt that he was during the entire evening bent on his own pleasure and recreation and engaged on no government business whatever. Moreover, Carroll testified and the trial judge found as a fact that Cunningham was employed as an agent in the Enforcement Division of the Unit, in contrast to the Permissive Division "which deals with bar and grill violations." He was off duty until the following Monday morning, and under the applicable regulations, would not have been permitted in a bar and grill without the permission of a superior and unless accompanied by a member of the Permissive Division.

■ The relevant statutes, 28 U.S.C. Sections 1346(b), 2671 and 2674, and Section 59 of the New York Vehicle and Traffic Law (now Section 388) are set forth in the margin.[1] As 28 U.S.C. Section 1346(b), generally referred to as the Tort Claims Act, is the source of authority to sue the United States in cases of this type, it is arguable that the District Court has no jurisdiction unless plaintiff proves that the government employee whose wrongful act or omission causes personal injury or loss of property, was at the time "acting within the scope of his office or employment." In other words, the statute was susceptible of the interpretation that the words "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred" were applicable and the government was subject to suit only in cases where the government employee was "acting within the scope of his office or employment," any state law to the contrary notwithstanding. Indeed, this was the precise holding in Williams v. United States, D.C.N.D.Cal.1952, 105 F.Supp. 208.[2] On appeal the Ninth Circuit af-

---

1. 28 U.S.C. § 1346(b) provides in pertinent part as follows:

"Subject to the provisions of chapter 171 of this title, the district courts, * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

28 U.S.C. § 2671 provides in pertinent part as follows:

"As used in this chapter and sections 1346(b) and 2401(b) of this title, the term—

" 'Federal agency' includes the executive departments and independent establishment of the United States, and corporations primarily acting as, instrumentalities or agencies of the United States but does not include any contractor with the United States.

" 'Employee of the government' includes officers or employees of any federal agency, members of the military or naval forces of the United States, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation.

" 'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty."

28 U.S.C. § 2674 provides in pertinent part as follows:

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

New York Vehicle and Traffic Law, § 59 provides in pertinent part as follows:

"Every owner of a motor vehicle or motor cycle operated upon a public highway shall be liable and responsible for death or injuries to person or property resulting from negligence in the operation of such motor vehicle or motor cycle, in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner."

2. See also United States v. Sharpe, 4 Cir., 1951, 189 F.2d 239; United States v. Eleazer, 4 Cir., 1949, 177 F.2d 914, also

firmed, 1954, 215 F.2d 800, but the rationale of the decision was different. It was held that ordinarily the law of California would govern but that with reference to members of the military and naval forces the federal statute, 28 U.S.C. Section 2671, applied, as that section defined "acting within the scope of his office or employment" to mean "acting in line of duty," with reference to members of the military and naval forces. This ruling was reversed by the Supreme Court, 1955, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761, in the following brief Per Curiam:

"This case is controlled by the California doctrine of *respondeat superior*. The judgment is vacated and the case is remanded for consideration in the light of that governing principle."

This decision by the Supreme Court disposed of the contention that the phrase "acting within the scope of his office or employment" was to be interpreted as matter of federal law. And state law was held to be controlling despite the fact that the jurisdiction of the United States District Courts over the United States as a defendant was limited to cases where the claim for damages for injuries to person or property was based upon the alleged wrongful act or omission of a government employee "while acting within the scope of his office or employment." But nothing was said, nor in the context of the facts of Williams was there any occasion to say anything, on the subject of whether or not, if state law imposed liability beyond the scope of the doctrine of *respondeat superior*, the United States could be held liable under the Tort Claims Act.

The interpretation of the Tort Claims Act by the Supreme Court in Williams has been applied by us in Mandelbaum v.

United States, 2 Cir., 1958, 251 F.2d 748, 750.

Appellant contends that the trial judge in the case now before us misapplied the New York law as elaborated in Mandelbaum; and she also contends that the words "or otherwise" in Section 59 of the New York Vehicle and Traffic Law require a holding of liability here wholly apart from the doctrine of *respondeat superior*, and that the trial judge in effect read these words out of the statute and thus again misapplied the New York law.

In Mandelbaum the driver of the government-owned truck, named Savage, was a member of the armed forces stationed at the Fort Hamilton army base in Brooklyn. He had been working daily at Fort Tilden, also on Long Island, and about five miles from Fort Hamilton. On the day of the accident he was told to use a truck instead of a passenger car and hence was not allowed to follow his usual route to Fort Tilden on the Belt Parkway. He claimed he got lost, went across one of the bridges to Manhattan, and came back. In any event, he was headed away from Fort Hamilton when the accident occurred. The trial judge in dismissing the claim against the government had held that Mandelbaum had not sustained the burden of proof that the driver of the car "was acting in the line of duty at the time of the incident" and that proof that the government owned the truck created no presumption that Savage was acting in the line of duty. In reversing, we held New York law governed, that under Section 59 (now Section 388) of the New York Vehicle and Traffic Law as interpreted by the New York Court of Appeals [Chaika v. Vandenberg, 252 N.Y. 101, 169 N.E. 103] there is a presumption that "the owner of a vehicle is responsible for the manner in which the vehicle is driven," and that

purporting to apply federal law, and Clemens v. United States, D.C.D.Minn.1950, 88 F.Supp. 971, which applied state law. However, most of the cases decided before the decision of the Supreme Court in Williams v. United States, 1955, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761,

did not state a choice of law rule. See, e. g., United States v. Campbell, 5 Cir., 1949, 172 F.2d 500; Murphy v. United States, D.C.W.D.N.Y.1953, 113 F.Supp. 345; Parrish v. United States, D.C.M.D. Ga.1950, 95 F.Supp. 80.

this presumption continues until it is rebutted by "substantial evidence." Hence, in Mandelbaum the mere proof of ownership did give rise to a presumption and the view of the law governing the case as stated by the trial judge turned out to be wrong. This is the basis for the reversal and the remand.

It is to be noted that Section 59 imposes liability resulting from negligence in the use or operation of the vehicle "in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied of such owner." We are told by appellant that this language can only mean one thing, namely, that once the automobile was delivered into the possession of Cunningham he was necessarily using it with permission and the government must be liable whether or not at the time of the accident he was using it in government business, because the statute reads "in the business of such owner or otherwise." [3] Differently expressed, it is appellant's contention that under New York law if the owner of an automobile permits someone else to drive it and if that someone else drives it negligently and causes damage, the owner is liable no matter what restrictions or limitations were put upon the use of the car. The answer to all this is that such is not the New York law. On the contrary, the New York Court of Appeals in Chaika v. Vandenberg, 1929, 252 N.Y. 101, 169 N.E. 103, 104, held that there is no "permission, express or implied," if the car is used for a prohibited purpose. In that case the defendant-owner of the car gave his son permission to drive the car from Floral Park to Westbury, Long Island, and the son drove to New York City instead, where the accident occurred. See also Hinchey v. Sellers, 1959, 7 N.Y.2d 287, 197 N.Y.S.2d 129, 165 N.E.2d 156.

As the trial judge in the case before us, on substantial evidence, found that Cunningham's permission to use the car was for a specific purpose and for a limited time and that he used it for a different purpose and for many hours after he was told to return it to the government garage, the New York law as above stated disposes of the case.

█ As the finding just above noted was based largely upon Carroll's testimony, appellant tells us that Carroll's testimony was objected to and should have been excluded. The alleged reason for this is that he was not produced in response to the demand for the production of witnesses for the taking of pretrial depositions. The short answer is that Carroll had retired and was no longer employed by the government at the time of the service of the notice. Accordingly, he was not subject to government control and was subject to subpoena by either party.

Perhaps some day under the Tort Claims Act there will arise a case where state law imposes liability upon the owner of an automobile who permits another to use it, whether or not it is used in the owner's business and whether or not it is used at a time and for a purpose specifically forbidden by the owner. See United States v. Taylor, 6 Cir., 1956, 236 F.2d 649. But for the rulings of the New York Court of Appeals construing Section 59 of the New York Vehicle and Traffic Law this might have been such a case. But it is not such a case; and we have no occasion to pass upon appellant's argument based upon the words "or otherwise" in Section 59.

Affirmed.

---

3. We cannot find any discussion in the briefs in Mandelbaum relative to the interpretation or effect of the words "or otherwise."