# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-2691

_____

Lesa M. Primeaux,        *
                                         *

     Plaintiff - Appellant,      *
                                         *   Appeal from the United States

v.                                     *   District Court for the District
                                         *    of South Dakota.

United States of America,     *
                                         *

     Defendant - Appellee.     *

_____

Submitted: January 11, 1999

Filed: June 17, 1999

_____

Before BOWMAN, Chief Judge,[*] LAY, McMILLIAN, RICHARD S. ARNOLD, FAGG, WOLLMAN, BEAM, LOKEN, HANSEN, MORRIS SHEPPARD ARNOLD, and MURPHY, Circuit Judges.

_____

LOKEN, Circuit Judge.

In the early morning hours of November 9, 1991, Rosebud Reservation tribal officer Kenneth Michael Scott was returning from a work-related training seminar in New Mexico, driving a white government vehicle with official license plates and a

_____

[*]The HONORABLE PASCO M. BOWMAN stepped down as Chief Judge at the close of business on April 23, 1999. He has been succeeded by the HONORABLE ROGER L. WOLLMAN.

police light bar on the roof. A few miles outside of Martin, South Dakota, beyond the limits of his tribal jurisdiction, Scott came upon Lesa Primeaux walking toward Martin because her car was stuck in a snowbank. Scott stopped his car and offered Primeaux a ride to Martin, which she accepted. After they traveled a short distance, Scott turned off the highway onto a side road, ordered Primeaux out of the car, and raped her. Primeaux filed this suit for damages against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671 et seq. (the "FTCA").

Following a bench trial, the district court[1] entered judgment for the government, finding that Scott's tortious conduct was not committed within the scope of his employment as a matter of South Dakota law. A divided panel of this court reversed and remanded, directing the district court to reconsider its decision taking into account the doctrine of apparent authority. See Primeaux v. United States, 102 F.3d 1458, 1463 (8th Cir. 1996) ("Primeaux I"). On remand, the district court again entered judgment for the government, finding that Scott had not used his apparent authority as a tribal police officer to commit the rape. Primeaux appealed, and a divided panel again reversed, this time directing entry of judgment in Primeaux's favor and remanding for calculation of her damages. See Primeaux v. United States, 149 F.3d 897, 901 (8th Cir. 1998) ("Primeaux II"). We granted the government's petition for rehearing en banc, 159 F.3d 1147 (8th Cir. 1998). Concluding that apparent authority is not a basis for FTCA liability in South Dakota, and that the rape was not within the scope of Scott's government employment, we affirm.

## I.

The FTCA is a limited waiver of the federal government's sovereign immunity, allowing claims against the United States:

---

[1]The HONORABLE RICHARD H. BATTEY, United States District Judge for the District of South Dakota.

for . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1); see also 28 U.S.C. § 2672. In determining the extent of the government's FTCA liability, "'[s]cope of employment' sets the line." Gutierrez de Martinez v. Lamango, 515 U.S. 417, 423 (1995). In this case, the parties agree that the determination of whether Scott was acting within the scope of his employment is governed by the law of the State where the tort occurred, South Dakota. See Brown v. Armstrong, 949 F.2d 1007, 1012 n.7 (8th Cir. 1991).[2] Thus, even if state law extends a private employer's vicarious liability to employee conduct not within the scope of employment, the government's FTCA liability remains limited to employee conduct within the scope of employment, as defined by state law. That is the situation we encounter in this case.

---

[2]This proposition was open to question under the FTCA as initially enacted. See United States v. Lushbough, 200 F.2d 717, 720 (8th Cir. 1952). But the Supreme Court's two-sentence remand in Williams v. United States, 350 U.S. 857 (1955), was construed as resolving the issue. In 1988, Congress enacted the Federal Employees Liability Reform and Tort Compensation Act (the Westfall Act), which amended the FTCA to provide that, in a common law tort action against a federal employee, the United States is substituted as defendant if the Attorney General certifies the employee acted "within the scope of his . . . employment." 28 U.S.C. § 2679(d)(1). This certification confers immunity on the employee personally. See H. Rep. No. 100-700 (1988), reprinted in 1988 U.S.C.C.A.N. 5945. In general, an issue of federal employee privilege or immunity is one of federal law because "[n]o subject could be one of more peculiarly federal concern." Howard v. Lyons, 360 U.S. 593, 597 (1959). In this case, Officer Scott was not sued personally so there was no Attorney General certification, and the government does not question the applicability of South Dakota law. Therefore, we do not consider whether the Westfall Act casts doubt on the widely accepted principle that the law of the State where the alleged tort occurred governs the FTCA scope of employment issue.

In determining the extent of an employer's vicarious liability for the torts of its employees, the Supreme Court of South Dakota is guided by the principles set forth in the Restatement (Second) of Agency. See Deuchar v. Foland Ranch, Inc., 410 N.W.2d 177, 180-81 (S.D. 1987); Leafgreen v. American Family Mutual Ins. Co., 393 N.W.2d 275, 277 (S.D. 1986); Primeaux I, 102 F.3d at 1462. Like other agency authorities, the Restatement recognizes that conduct within an employee's scope of employment, and conduct relied upon by a third person as consistent with the employee's apparent authority, are distinct bases for imposing vicarious liability on the employer/principal. The distinction is made explicit in § 219(2) of the Restatement:

> (2) *A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless*:
>
> \*     \*     \*     \*     \*
>
> (d) the servant purported to act or to speak on behalf of the principal and *there was reliance upon apparent authority*, or he was aided in accomplishing the tort by the existence of the agency relation.

(Emphasis added.) As the Supreme Court recently noted, § 219(2)(d) places apparent authority liability outside the realm of scope of employment liability -- it is "an entirely separate category of agency law." Faragher v. City of Boca Raton, 118 S. Ct. 2275, 2290 (1998). Likewise, this court and other circuits have recognized in various contexts that apparent authority and scope of employment are "two theories of vicarious liability." Commerford v. Olson, 794 F.2d 1319, 1321 (8th Cir. 1986) (applying Minnesota agency law to federal securities law claims); see Wright-Simmons v. City of Oklahoma City, 155 F.3d 1264, 1269-71 (10th Cir. 1998) (Title VII); Costos v. Coconut Island Corp., 137 F.3d 46, 48-49 (1st Cir. 1998) (Maine law). If the Supreme Court of South Dakota would follow this Restatement distinction, the panel majority erred in basing FTCA liability on the doctrine of apparent authority.

To our knowledge, the Supreme Court of South Dakota has not had occasion to apply or even cite § 219(2)(d) of the Restatement. The Court has long followed the agency principle "that a master cannot be held liable for his servant's acts or negligence beyond the scope of his employment, even though the injury could not have been committed without the facilities afforded to the servant by the master." Morman v. Wagner, 262 N.W. 78, 79 (S.D. 1935). In Morman, the Court applied a rather general test for determining scope of employment:

> [I]f the act is for the benefit of the employer, either directly or indirectly, the act is within the general scope of the servant's employment, but if the act performed is not in any way connected with the service for which he is employed, but for his own particular and peculiar purposes, then the act is not within the scope of the employment.

262 N.W. at 79. In the later case of Alberts v. Mutual Serv. Cas. Ins. Co., 123 N.W.2d 96, 98-99 (S.D. 1963), the Court adopted the Restatement's multi-factor test for determining whether employee conduct is within the scope of employment. That test, now found in § 229 of the Restatement, does *not* include the principles of apparent authority found elsewhere in the Restatement. Its focus is on the relationship of the employee's conduct to the employer's business.[3]

The doctrine of apparent or ostensible authority has a long but independent lineage in South Dakota law. It is in large part statutory, see S.D. CODIFIED LAWS §§ 59-3-3, 59-6-3, and its focus is on the reliance of the victim on the agent's apparent authority to act on behalf of a principal. "Strictly speaking, ostensible agency is no

---

[3]One factor is "whether or not the act is seriously criminal." § 229(2)(j). An employee's intentional, violent crime is unlikely to be within the scope of employment, but there are exceptions. For example, in Hasche v. Wagner, 227 N.W. 66 (S.D. 1929), the principal was liable for the resulting violent assault when he told an agent to use such force as might be necessary in repossessing farm equipment.

agency at all; it is in reality based entirely on an estoppel." Federal Land Bank of Omaha v. Sullivan, 430 N.W.2d 700, 701 (S.D. 1988). The independent origin and application of the doctrine in early cases are strong evidence the Supreme Court of South Dakota, if faced with the issue in this case,[4] would follow the Restatement's recognition that scope of employment and apparent authority are distinct theories of vicarious liability.

Primeaux nonetheless argues that under South Dakota law the doctrine of scope of employment "includes both actual and apparent authority." Like the panel majority, Primeaux relies for this proposition on the Supreme Court of South Dakota's opinion in Leafgreen. In that case, the Court held that an insurance company was not vicariously liable when its former employee used information obtained while employed as defendant's agent to burgle an insured's home. The Court began its analysis by reciting the doctrine of apparent authority -- "a principal may be held liable for fraud and deceit committed by an agent within his apparent authority, even though the agent acts solely to benefit himself." 393 N.W.2d at 277. It then quoted portions of § 261 of the Restatement, which further refines when an agent's apparent authority makes the principal vicariously liable to third persons for the agent's fraud.[5] Recognizing a need

---

[4]This inquiry is necessarily hypothetical because federal courts have exclusive jurisdiction over FTCA cases, so the Supreme Court of South Dakota is not presented with cases where an employer's liability is limited to scope of employment, rather than the full array of vicarious liability theories under state law. We have traditionally bridged this gap by looking to general agency principles such as the Restatement. See United States v. Farmer, 400 F.2d 107, 109-110 (8th Cir. 1968).

[5]As the Primeaux I panel majority observed, 102 F.3d at 1462, the tortious misconduct of employee Scott in this case is more directly addressed in § 265 of the Restatement, rather than the fraud provisions in § 261. The Restatement expressly lists the apparent authority provisions of § 261 and § 265 as two of the situations "in which a master may be liable for torts of servants acting solely for their own purposes and hence not in the scope of employment." RESTATEMENT OF AGENCY 2D § 219, cmt. e.

-6-

to limit the extent of apparent authority liability for criminal misconduct, and following the lead of courts in other jurisdictions, the Court then borrowed the concept of foreseeability found in § 231 of the Restatement, one of the provisions dealing with scope of employment. For an employer to be vicariously liable under the apparent authority doctrine, the Court concluded, "the employee's conduct must not be so unusual or startling that it would be unfair to include the loss caused by the injury among the costs of the employer's business." Id. at 280-81. Applying that standard to the facts in Leafgreen, the Court held the insurer not liable for its agent's burglary.

As subsequent South Dakota cases demonstrate, the fact that Leafgreen borrowed the scope of employment foreseeability factor in applying the doctrine of apparent authority does not mean that the Supreme Court of South Dakota now considers apparent authority to be a part of the scope of employment inquiry. Less than one year after Leafgreen, the Court decided Deuchar, where a ranch hand negligently shot a visitor to the ranch while hunting. The Court analyzed Deuchar under the scope of employment doctrine, quoting Restatement § 229 for the relevant standard. 410 N.W.2d at 180 n.2. The Court explained that an employer is not liable "for the acts of a servant who has embarked upon a 'frolic' of his own with no underlying purpose of furthering his master's business," but the scope of employment question becomes more difficult "when a servant acts for dual purposes, that is, to serve the master and to further personal interests." Citing Leafgreen, the Court "adopted the foreseeability test for determining when a servant's acts are within the scope of employment." Id. at 181.

Leafgreen and Deuchar applied the same foreseeability test, but they did not intermingle the two distinct theories of vicarious employer liability -- scope of employment and apparent authority. In two more recent decisions, the Supreme Court of South Dakota has maintained this analytical distinction. McKinney v. Pioneer Life Ins. Co., 465 N.W.2d 192, 194-95 (S.D. 1991), was an insurance agent fraud case; like Leafgreen, it was analyzed under the doctrine of apparent authority. More significantly, South Dakota Public Entity Pool for Liability v. Winger, 566 N.W.2d

125, 128-29 (S.D. 1997), involved an insurance coverage issue that turned on scope of employment. The Court applied the traditional scope of employment analysis of Deuchar, rather than the apparent authority analysis of Leafgreen.

Primeaux has failed to cite *any* case that imposed FTCA liability solely because the victim of an intentional tort relied upon a federal employee's apparent authority. The Restatement distinguishes between scope of employment and apparent authority as theories of vicarious liability. South Dakota law generally follows the Restatement. The Supreme Court of South Dakota has long recognized that vicarious liability for conduct within the scope of employment is based upon the employment relationship, whereas vicarious liability for conduct within an agent's apparent authority is based upon estoppel. Recent South Dakota cases have linked the discrete analyses with a common foreseeability element while continuing to recognize two distinct legal theories. In these circumstances, we agree with the government that the panel majority in Primeaux I and Primeaux II erred in applying the South Dakota doctrine of apparent authority to determine whether Officer Scott was acting within the scope of his employment for FTCA purposes when he raped Lesa Primeaux.

## II.

The remaining question is whether the district court erred in finding that the rape of Primeaux was not within the scope of Scott's employment as a tribal officer, applying the traditional South Dakota scope of employment standard. At the outset, we note some uncertainty whether we should review this question under the clearly

erroneous or the *de novo* standard of review.[6] We put this question aside, however, because the district court's judgment must be affirmed under either standard.

In oral findings and conclusions at the end of trial, the district court summarized the scope of employment standard in <u>Deuchar</u> and then compared this case with two of our prior FTCA decisions applying South Dakota law. In <u>Lushbough</u>, an off-duty surveyor trainee borrowed a government truck and negligently caused an accident while completing personal errands. We reversed an FTCA judgment against the United States, concluding it was "too clear for argument that at the time of the accident . . . [the trainee] was not acting within the scope of his office or employment." 200 F.2d at 721. By contrast, in <u>Red Elk v. United States</u>, 62 F.3d 1102 (8th Cir. 1995), an on-duty police officer detained a thirteen-year-old girl for a curfew violation and raped her in the back seat of his police car. We acknowledged that this criminal conduct was done to benefit the officer personally, not his government employer, but concluded it was foreseeable that on-duty police occasionally misuse their authority in this manner. In affirming a determination that the assault was within the scope of the police officer's

---

[6]The Supreme Court of South Dakota considers scope of employment a question of fact for the jury. <u>See</u> <u>Deuchar</u>, 410 N.W.2d at 181. At least one circuit reviews FTCA scope of employment findings for clear error. <u>See</u> <u>Duffy v. United States</u>, 966 F.2d 307, 314 (7th Cir. 1992). The Supreme Court called FTCA scope of employment the "determination of a fact" in <u>Lamagno</u>, 515 U.S. at 424, but more recently commented in another context, "scope of employment ultimately expresses a conclusion not of fact but of law." <u>Faragher</u>, 118 S. Ct. at 2287. Calling this a mixed question of fact and law still leaves the standard of review in doubt. <u>See, e.g.</u> <u>Smith v. Equitable Life Assur. Society</u>, 67 F.3d 611, 616 (7th Cir. 1995), noting the Seventh Circuit has "moved decisively" toward clear error review of all mixed questions of fact and law based upon recent Supreme Court decisions such as <u>Cooter & Gell v. Hartmarx Corp.</u>, 496 U.S. 384, 402 (1990). Perhaps reflecting this confusion, the panel majority reviewed the district court's scope of employment determination for clear error in <u>Primeaux I</u>, 102 F.3d at 1460, but reviewed the apparent authority determination *de novo* in <u>Primeaux II</u>, 149 F.3d at 898-99, 901.

employment, we expressly distinguished <u>Lushbough</u>: "In <u>Lushbough</u> the agent borrowed the principal's vehicle to run a purely personal errand unconnected with the principal and had an accident. . . . There is more in our present case, however, than just using the police vehicle." 62 F.3d at 1106.

This case, the district court reasoned, "is somewhat in the middle between <u>Lushbough</u> and <u>Red Elk</u>." When he raped Primeaux, Officer Scott was using a government car for authorized travel, but he was unarmed, out of uniform, and off duty, insofar as his law enforcement responsibilities were concerned. Indeed, he was outside his jurisdiction. Scott gave Primeaux a ride because she was stranded far from town late on a cold night -- the kind of assistance any citizen might offer -- not to detain her as part of his law enforcement duties. Noting that Scott's act of sexual assault was obviously not in furtherance of his government mission, the court determined that the assault "was committed while Mr. Scott was on a frolic of his own and not acting in the course or scope of his employment."

If scope of employment is a finding of fact, this finding is not clearly erroneous. Treating scope of employment as a mixed question of fact and law reviewable *de novo*, we agree with the district court's conclusion. <u>Red Elk</u> and recent cases from other jurisdictions have concluded it is sufficiently foreseeable to a government employer that on-duty police officers will occasionally misuse their authority to sexually assault detainees. But this case is far different. The connection between Officer Scott's government employment and his sexual assault of Primeaux was simply too remote and tenuous to be foreseeable to his employer. In the words of <u>Leafgreen</u>, it was conduct "so unusual or startling that it would be unfair to include the loss caused by the injury among the costs of the employer's business."

The judgment of the district court is affirmed.

-10-

LAY, Circuit Judge, dissenting, with whom WOLLMAN, Chief Judge, McMILLIAN, RICHARD S. ARNOLD, and MURPHY, Circuit Judges, join.

The court's opinion is directly contrary to the holding of the United States Supreme Court in Williams v. United States, 350 U.S. 857 (1955).  In addition, the court now sets a new precedent not only in this circuit, but throughout the United States, in departing from uniform interpretation of federal law.[1]  The court now finds that regardless of state law as to vicarious liability, Congress has limited liability under the FTCA to a wooden interpretation of "scope of employment."[2]

In Tonelli v. United States, 60 F.3d 492 (8th Cir. 1995), this circuit included "apparent authority" within the terms of "scope of employment" under the FTCA.  The court's holding in the instant case appears to be in direct conflict with the holding in Tonelli, in which this court, applying Iowa law in an FTCA case, reversed summary judgment granted in favor of certain postal workers.  The district court had found that the employees were not acting within the scope of employment when they pilfered some mail from the plaintiff's mailbox.  In the section entitled "scope of employment,"

---

[1]All of the circuits including this court have held that liability of the United States may be imposed under the Federal Tort Claims Act ("FTCA") if a private employer would be liable under state law respondeat superior where the wrongful conduct took place.  See Tonelli v. United States, 60 F.3d 492, 495 (8th Cir. 1995); Rodriguez v. Sarabyn, 129 F.3d 760, 766 (5th Cir. 1997); Richman v. Straley, 48 F.3d 1139, 1145 (10th Cir. 1995); Kelly v. United States, 924 F.2d 355, 357 (1st Cir. 1991); James v. United States, 467 F.2d 832, 833 (4th Cir. 1972); United States v. Farmer, 400 F.2d 107, 109 (8th Cir. 1968); O'Toole v. United States, 284 F.2d 792, 794 (2d Cir. 1960).

[2]The court specifically holds:  "Thus, even if state law extends a private employer's vicarious liability to employee conduct not within the scope of employment, the government's FTCA liability remains limited to employee conduct within the scope of employment, as defined by state law.   That is the situation we encounter in this case."

-11-

this court held that a genuine issue of material fact existed as to whether the postal employees acted within their <u>apparent</u> authority as defined by Iowa law. The court in <u>Tonelli</u> held:

> The Tonellis agree that opening and copying first class mail addressed to another person generally falls outside of the scope of a postal worker's employment. . . . This determination, however, does not end our inquiry. "'The fact that the servant's act is expressly forbidden by the master, or is done in a manner which he has prohibited, is to be considered in determining what the servant has been hired to do, but it is usually not conclusive, <u>and does not in itself prevent the act from being within the scope of employment.</u>'" <u>Vlotho</u>, 509 N.W.2d at 354 (quoting W. Page Keeton et al., <u>Prosser & Keeton on the Law of Torts</u> § 70 at 502 (5th ed. 1984)).

<u>Tonelli</u>, 60 F.3d at 495 (emphasis added).[3]

This court denies compensatory damages to a young woman who was unmercifully assaulted and raped by a United States police officer. After her car careened into a ditch, Ms. Primeaux was stranded on a cold winter night on a deserted stretch of highway in the middle of her reservation. The officer approached her in a police car <u>with its red lights flashing</u>, thereby displaying his badge of authority, and offered her a ride. The officer had been authorized to travel in the police car on an

---

[3]Other courts of appeals have also recognized that "scope of employment" can include apparent authority. For example, in <u>Martin v. Cavalier Hotel Corp.</u>, 48 F.3d 1343 (4th Cir. 1995), the Fourth Circuit stated "under common law agency principles an employer is also liable for an employee's wrongful acts, even if those acts are <u>not</u> committed within the actual scope of his employment, <u>if</u> the employee uses his apparent authority to accomplish the wrongful acts and so is acting within the 'apparent scope' of his employment." <u>Martin</u>, 48 F.3d at 1352. <u>See</u> <u>also</u> <u>Karibian v. Columbia Univ.</u>, 14 F.3d 773, 780 (2d Cir. 1994) (applying common law agency principles and holding that "an employer is liable . . . if the supervisor uses his actual or apparent authority to further the harassment . . .").

expense-paid trip to and from the State of New Mexico. He drove Ms. Primeaux to an isolated spot, ordered her out of the car, and raped her. The en banc court urges that the officer was not acting within the scope of his employment and that the United States was immune from liability under the FTCA.

In two trials and on two appeals, the government, with all its legal resources, has never claimed that the statutory phrase "scope of employment" as used in the FTCA limits the law of respondeat superior as adopted by South Dakota law. In addition, the government never raised its alternative claim that even if state law applied to its fullest extent, under South Dakota law the doctrine of apparent authority cannot be considered in measuring whether an employee was acting within the scope of employment. The first time the government raised these defenses was in its suggestion for rehearing en banc after the second appeal, after the dissent on that appeal had raised them for the first time.[4] It is understandable that the government did not heretofore rely on these

_____

[4]The government claims that it is permitted to raise these issues for the first time on appeal because they affect this court's subject-matter jurisdiction. It argues that the FTCA is only a limited waiver of the government's sovereign immunity and that this court has no jurisdiction to impose liability under the FTCA for acts of government employees outside of the scope of employment. I would agree that the issue of sovereign immunity can be raised at any time because it is a jurisdictional issue. United States v. Johnson, 853 F.2d 619, 622 n.7 (8th Cir. 1988). The specific issue in this case, however, is not whether we have jurisdiction to impose liability outside the scope of employment, but rather is what constitutes scope of employment under South Dakota law. This is not an issue of sovereign immunity, but simply a question of state law relating to the doctrine of respondeat superior. Because this is not a jurisdictional issue, the government is barred from raising it for the first time in its petition for rehearing. Lacy v. Lockhart, 697 F.2d 271, 272 (8th Cir. 1983); United States v. State of South Dakota, 665 F.2d 837, 841-42 (8th Cir. 1981).

The Supreme Court stated in Hormel v. Helvering, 312 U.S. 552 (1941), that the rule providing that a party cannot raise an issue for the first time on appeal is "essential in order that parties may have the opportunity to offer all the evidence they believe

defenses at trial and on the two appeals.  There is no law which supports them.  In fact, the law is universally to the contrary.

First, it is clear that the phrase "scope of employment" in the FTCA does not limit the state law of respondeat superior.  See Tonelli, supra.  In fact, this argument was expressly rejected by the United States Supreme Court in Williams v. United States, 350 U.S. 857 (1955).  In the lower court opinion, Williams v. United States, 215 F.2d 800 (1954), the Ninth Circuit interpreted the phrase "scope of employment" within the FTCA as equivalent to "acting in line of duty" when applied to a member of the military forces.  It reasoned that Congress had thus limited the rule of respondeat superior.  The circuit court observed:

> If Seabourn was not acting in line of military duty at the time he injured appellant, the rule of respondeat superior (as applied in orthodox "master and servant" cases) loses its standardized force for that rule has been modified in the significant manner here noted.  We need not stress the fact that when the sovereign waives its immunity from suit, it may, as here, do so on its own terms.

relevant to the issues . . . [and] in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence."  Helvering, 312 U.S. at 556.  This rule applies unless it would result in a "plain miscarriage of justice."  Id. at 558.  This is not such a case.  In fact, by allowing the government to argue this belated issue, there will be a plain miscarriage of justice with respect to Ms. Primeaux, the victim in this case.  The arguments should, therefore, be considered waived.

As Justice Scalia has so appropriately observed:  "The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one."  United States v. Burke, 504 U.S. 229, 246 (1992) (Scalia, J. concurring).

Williams, 215 F.2d at 808 (emphasis added).  This is the same reasoning used by this court today.  Nonetheless, the United States Supreme Court summarily vacated the Ninth Circuit opinion with the terse admonition:  "This case is controlled by the California doctrine of respondeat superior."  Williams, 350 U.S. at 857.

The court's position that the government's liability does not follow the common law of respondeat superior applied by the state where the wrong takes place  ignores the mandate of Congress that says "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, . . . ."  28 U.S.C. § 2674 (1994) (emphasis added).[5]  Furthermore, the legislative history of the FTCA supports the fact that the court's narrow interpretation of scope of employment is misguided.  When the FTCA was originally enacted in 1946, there was an exclusion for "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."  Federal Tort Claims Act § 421 (1946).  This section was amended, however, in 1974 to provide that "investigative or law enforcement officers" can be held liable

_____

[5]The court's position also ignores the statutory terms of 28 U.S.C. § 1346(b):

Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b) (1994) (emphasis added).

-15-

for "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution."[6]  28 U.S.C. § 2680(h) (1994).  According to the court's strict, literal interpretation of scope of employment, these acts would not be included.  Congress intended, however, to include these intentional torts within the liability of the government.  It is evident from the legislative history of the FTCA and, more importantly, from the Supreme Court itself that scope of employment is defined by the fullest extent of state <u>respondeat superior</u> law.

The court urges an alternative argument:  the state law of South Dakota does not recognize that scope of employment includes the rule on apparent authority.  Although this argument was never raised by the government at trial or in the two prior appeals, the government now adopts this reasoning.

The court depends on the "unless" language included in the Restatement (Second) of Agency § 219(2)(d)[7] as support for its contention that apparent authority

---

[6]This subsection defines "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h) (1994).  The dissent on the second appeal made the argument that the BIA officer in this case was not acting within the scope of employment because he was not effecting an arrest.  This is clearly incorrect as section 2680(h) only serves to define "investigative or law enforcement officer" and not to limit the definition of scope of employment.  If anything, this section viewed in connection with the legislative intent supports the broad interpretation of scope of employment that I discussed above.

[7]South Dakota has adopted the Restatement (Second) of Agency.  <u>See</u> <u>e.g.</u>, <u>Leafgreen v. American Family Mut. Ins. Co.</u>, 393 N.W.2d 275, 280 (S.D. 1986) (relying on section 261 of the Restatement (Second) of Agency); <u>Dahl v. Sittner</u>, 474 N.W.2d 897, 903 (S.D. 1991) (adopting Restatement (Second) of Agency § 217C).

The Restatement (Second) of Agency § 219(2)(d) provides:

-16-

and scope of employment are two different theories. This overlooks the controlling law of South Dakota relating to the doctrine of respondeat superior. Under South Dakota law, apparent authority is an exception to scope of employment and is therefore part of the doctrine of respondeat superior.[8] Furthermore, contrary to the court's opinion, South Dakota is not the only state that includes apparent authority within scope of employment analysis.[9] As we stated in the second panel decision:

> A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless: . . .
>
> the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

[8]This is true in other contexts. For example, the final judgment rule is a statutory rule allowing an appeal only from a final judgment. That is the general rule, but there are exceptions to that rule such as interlocutory appeals, extraordinary writs, and the collateral order rule. In order to understand the rule itself, the exceptions become part of the rule.

[9]See Sports Car Centre of Syracuse, Ltd. v. Bombard, 672 N.Y.S.2d 201, 203 (N.Y. App. Div. 1998) (stating that "[a]n employer may be vicariously liable for conversion by an employee where the employee is acting within the scope of his apparent authority") (citations omitted); Borg-Warner Protective Serv. Corp. v. Flores, 955 S.W.2d 861, 866 (Tex. Ct. App. 1997) (noting that "under common-law agency principles, an employer is liable for an employee's wrongful acts, even if those acts are not committed within the actual scope of his employment, if the employee uses his apparent authority to accomplish the wrongful acts and so is acting within the 'apparent scope' of his employment") (citation omitted); Rickborn v. Liberty Life Ins. Co., 468 S.E.2d 292, 296 (S.C. 1996) (acknowledging apparent authority and stating "a general agent's authority is determined by the nature of the business, and is coextensive with his scope of employment . . ."); Leitch v. Switchenko, 426 N.W.2d 804, 806 (Mich. Ct. App. 1988) (stating that "[l]iability under this doctrine may also be based on a finding that the employee was acting within the apparent scope of his employment"); Kerans

The dissent also overlooks that South Dakota law has recognized that the distinction between actual authority and apparent authority simply pertains to the manner in which an agent obtains authority. See Federal Land Bank of Omaha v. Sullivan, 430 N.W.2d 700, 701 (S.D. 1988). "Actual authority is created by manifestations from the principal to the agent, . . . while ostensible [or apparent] authority is created when the principal allows a third person to believe the agent has authority to act on the principal's behalf." Id. (citations omitted).

"[I]n the measurement of its effects, authority is authority and the operation of apparent authority is of no lesser degree of effectiveness than is the operation of real authority." See Harold Gill Reuschlein & William A. Gregory, Handbook on the Law of Agency and Partnership 58 (1979). Where apparent authority exists, the third person has the same rights with reference to the principal as where actual authority exists. See Restatement § 8 cmt. a.

Primeaux v. United States, 149 F.3d 897, 902 n.10. (emphasis added).

This circuit also has recognized that under South Dakota law foreseeability is "central" to the analysis, and is determined by the nexus between the agent's employment and the activity which causes the injury. Red Elk v. United States, 62 F.3d 1102, 1102-3 (8th Cir. 1995). In Red Elk, this court found the government liable under the FTCA where there was misuse of power by a tribal police officer who raped a thirteen-year-old child while the officer was on duty. The court in Red Elk relied on the South Dakota Supreme Court case of Leafgreen v. American Family Mutual Ins. Co., 393 N.W.2d 275 (S.D. 1986), which stated:

---

v. Porter Paint Co., 575 N.E.2d 428, 432 (Ohio 1991) (stating that federal courts have held that "where an employee is able to sexually harass another employee because of the authority or apparent authority vested in him by the employer, it may be said that the harasser's actions took place within the scope of his employment") (citations omitted).

-18-

We think it fairly stated that a principal is liable for tortious harm caused by an agent where a nexus sufficient to make the harm foreseeable exists between the agent's employment and the activity which actually caused the injury; foreseeable is used in the sense that the employee's conduct must not be so unusual or startling that it would be unfair to include the loss caused by the injury among the costs of the employer's business.

Leafgreen, 393 N.W.2d at 280-81.[10]

We discussed the foreseeability of the officer's actions in our first panel opinion in this case:

[W]hile it is unfortunate and uncommon, sexual misconduct by an officer is in some circumstances reasonably foreseeable. It is no less foreseeable that such an abuse of authority could occur while the officer is not technically on duty, but rather possesses the apparent authority sufficient to cause a person to rely on or fear that authority and succumb to sexual

_____

[10]The South Dakota Supreme Court also observed in Leafgreen:

One way to determine whether a risk is inherent in, or created by, an enterprise is to ask whether the actual occurrence was a generally foreseeable consequence of the activity. However, "foreseeability" in this context must be distinguished from "foreseeability" as a test for negligence. In the later sense "foreseeable" means a level of probability which would lead a prudent person to take effective precautions whereas "foreseeability" as a test for respondeat superior merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business. [citations omitted] In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one "that may fairly be regarded as typical of or broadly incidental" to the enterprise undertaken by the employer.

Leafgreen, 393 N.W.2d at 280 (quoting Rodgers v. Kemper Constr. Co., 124 Cal. Rptr. 143, 148-49 (Cal. Ct. App. 1975)).

-19-

advances. Cases holding employers liable for sexual assaults or excessive use of force by police officers reason that such conduct is foreseeable because of the unique position of trust held by such officers.

Primeaux v. United States, 102 F.3d 1458, 1463 (8th Cir. 1996) (citation omitted) (emphasis added).

In the second case, the panel commented:

> A police officer is a public servant given considerable public trust and authority. Our review of the jurisprudence indicates that, almost uniformly, where excesses are committed by such officers, their employers are held to be responsible for their actions even though those actions may be somewhat removed from their usual duties. This is unquestionably the case because of the position of such officers in our society.

Primeaux, 149 F.3d at 900-01 (quoting Red Elk, 62 F.3d at 1107).

There should be little doubt that Officer Scott while traveling the highway that evening was acting under the express authority of the BIA. As he approached Ms. Primeaux, (1) he was authorized to travel in the police car during an expense-paid trip to and from New Mexico, (2) Scott turned on his red lights atop the police car, (3) he told Ms. Primeaux he was a BIA officer, (4) Ms. Primeaux testified she followed Scott's command to get out of the car because he was a "cop," and (5) the trial court found that Scott accomplished the tort by the existence of his agency relationship.

As we previously observed:

> Viewing this evidence through the eyes of the victim, we deem it obvious that any ordinary citizen would believe under similar circumstances that an officer of the law had stopped to render assistance.

The fact that the victim was not arrested, involuntarily stopped or detained is barely relevant under these circumstances. An officer's duty is not limited solely to the arrest and apprehension of law violators. An officer of the law often displays his apparent or actual authority to offer assistance to citizens, especially those in distress. Any citizen, especially on a "dark, cold night in the middle of nowhere" would take more assurance in and place greater reliance on assistance offered by an officer of the law than by a complete stranger.

Id. at 899.[11]

The officer was also within the "scope of employment" even as narrowly defined by the court. The officer was authorized to travel to a training session in New Mexico. During his return trip, he was receiving per diem and mileage. He was authorized to drive his assigned police car with red lights affixed on top. He testified that he thought it part of his duties to offer a stranded motorist a ride. Ms. Primeaux testified that Officer Scott approached her and turned on his red lights on the police vehicle. The district court found all of these facts to be true.[12] To hold that Officer Scott, under these circumstances, was not acting within the scope of his employment is inexplicable.[13] The district court concluded, however, that the officer was not within his scope of employment because he was outside of his territorial jurisdiction and was

---

[11]The evidence is undisputed that there was reliance by Ms. Primeaux upon his apparent authority, or that he was aided in accomplishing the tort by the existence of the agency relation. See Restatement of Agency § 219(2)(d).

[12]The district court found Ms. Primeaux's version to be true. In fact, it held Ms. Primeaux's testimony "much more credible than that of Mike Scott." Trial Tr. at 251.

[13]Assume Officer Scott had an accident with another vehicle while driving the police car back to Rosebud that evening, there could be little question that he would be found, as a matter of law, to be acting within the scope of his employment. Scott was authorized to go to the training session, drive the government car, authorized to use a government credit card for the trip and paid his salary while on the trip.

not on duty for law enforcement purposes. This finding was a clear error of law. The fact that the officer was not in his jurisdiction does not mean he was outside his scope of employment at the time he offered Ms. Primeaux a ride. The officer obviously was operating a government vehicle under the authority of the BIA. As in Red Elk, it was foreseeable that he would stop and offer assistance to a stranded motorist. It was also foreseeable that he would commit an act of violence upon this motorist. The law is clear that even though a government employee commits an intentional tort, that employee can still be acting within the scope of employment, as was the case here. See Red Elk, 62 F.3d at 1107-08.

Under either theory, the undisputed record in this case shows that the government should be held liable, and it is a manifest injustice to hold otherwise.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

-22-