Kevin MENTZ, Plaintiff,

v.

UNITED STATES of America, The Department of the Interior, and The Bureau of Indian Affairs (BIA), Defendants.

No. A1–03–123.

United States District Court, D. North Dakota, Southwestern Division.

March 4, 2005.

Chad Rory McCabe, Vinje Law Firm, Bismarck, ND, for Plaintiff.

David L. Peterson, Bismarck, ND, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

HOVLAND, Chief Judge.

Before the Court is the Defendants' Motion to Dismiss filed on December 30, 2004. On February 1, 2005, the Plaintiff filed a response opposing the motion. For the following reasons, the Defendants' motion is granted.

## I. BACKGROUND

Miles Gustavson was formerly employed as an auto mechanics instructor at Standing Rock Community Grant School ("Grant School").[1] Complaint, ¶ 8. It is alleged that prior to November 26, 2000, Gustavson brought a 1972 or 1974 model SkiDoo Elan snowmobile to class so that his students could conduct repairs on the snowmobile. Complaint, ¶¶ 9–10.

On November 26, 2000,[2] the plaintiff, Kevin Mentz, and his younger brother Tim Mentz met with Gustavson at the Grant School. Complaint, ¶ 12. According to the complaint, the purpose of the visit was Tim's interest in purchasing a snowmobile from Gustavson. The record reveals that Tim had been in possession of the snowmobile prior to November 26th, and was taking it back to Gustavson to have the handle bars repaired. Deposition of Kevin Mentz, pp. 12–13. It is unclear whether Tim had already purchased the snowmobile, or if he and Gustavson were still negotiating the sale. Deposition of Kevin Mentz, pp. 10,

---

1. Gustavson was originally named in the lawsuit but he was never served and was dismissed without prejudice on April 26, 2004. *See* Docket No. 6.

2. While the complaint originally indicated that the events took place on November 21, 2000, it was later revealed that the actual date was Sunday, November 26, 2000. Complaint, ¶¶ 8–16; Deposition of Kevin Mentz, p. 27.

18. In any event, Mentz witnessed Gustavson fix the handle bars and put a new "power belt" on the snowmobile. Complaint, ¶ 14; Deposition of Kevin Mentz, p. 20. This encounter occurred on a Sunday morning, November 26, 2000. Gustavson was working on a snowmobile that he personally owned. He was not assisting students or conducting any school functions or activities while using the shop that morning. After making some modifications to the snowmobile, Gustavson encouraged Mentz to take the snowmobile for a test drive. Complaint, ¶ 15. Mentz was reluctant but did so. Deposition of Kevin Mentz, pp. 12–13, 16–17. However, Mentz drove the snowmobile for a short distance during which time a piece of the engine flew from the snowmobile, cut the choke cable, and struck Mentz in the chin. Complaint ¶ 16. Kevin sustained a broken chin, permanent scarring and damage to both eyes.

On October 17, 2003, Mentz filed an action under the Federal Tort Claims Act against the United States of America, the Department of the Interior, the Bureau of Indian Affairs, and Miles Gustavson, in his official capacity at the Grant School, alleging negligence and failure to warn. Mentz seeks damages in the amount of $2,000,000 for "loss of earnings and earning capacity, loss of income or support, and loss of employment or business or employment opportunities, pain and suffering, inconvenience, mental anguish, emotional distress, injury to reputation, humiliation, stigma and hardship." Complaint, ¶ 18.

## II. *LEGAL DISCUSSION*

■ At the outset, it is apparent from the record that Mentz has exhausted his administrative remedies, a prerequisite to filing an action under the Federal Tort Claims Act in federal court. *See* 28 U.S.C. § 2825(a). The Government seeks a dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. It is well-established that "a district court 'has authority to consider matters outside the pleadings when subject matter jurisdiction is challenged under Rule 12(b)(1).'" *Harris v. P.A.M. Transport, Inc.*, 339 F.3d 635, 637, n. 4 (8th Cir.2003) (quoting *Osborn v. United States*, 918 F.2d 724, 728, n. 4 (8th Cir.1990)) (citing *Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947)). Unlike a motion to dismiss under 12(b)(6), to look at matters outside the pleadings does not convert a Rule 12(b)(1) motion to a motion for summary judgment. *Id.* The Eighth Circuit has explained that the difference between the two rules "is rooted in the unique nature of the jurisdictional question." *Osborn*, 918 F.2d 724, 729 (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). "[A] district court has 'broader power to decide its own right to hear the case than it has when the merits of the case are reached.'" *Id.* Jurisdictional issues, whether they involve questions of law or fact, are for the court to decide. *Id.*

■ "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn*, 918 F.2d 724, 730. As a result, "no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of undisputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Id.* "Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.*

## A. *FEDERAL TORT CLAIMS ACT*

Mentz's claim arises under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. §§ 1346(b), 2671–2680. Under the FTCA, the United States has waived its sovereign immunity to the following extent:

for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any *employee of the Government* while *acting within the scope of his office or employment,* under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the *law of the place* where the act or omission occurred.

28 U.S.C. § 1346(b)(1) (emphasis added).[3] The Court will discuss the relevant provisions of the FTCA and how they apply to this case.

### 1. *"EMPLOYEE OF THE GOVERN-MENT"*

■ At the time of the incident, Gustavson was employed by the Standing Rock Community Grant School which is operated by Standing Rock Community School Board, Inc., through an agreement entered into under the Tribally Controlled Schools Act of 1988 ("TSCA"), Public Law 100–297, codified at 25 U.S.C. § 2501–2511. *See* Defendant's Ex. No. 1. The term "tribally controlled school" is defined by 25 U.S.C. § 2511 as follows:

The term "tribally controlled school" means a school that—

(A) is operated by an Indian tribe or a tribal organization, enrolling students in kindergarten though grade 12, including a preschool;

(B) is not a local educational agency; and

(C) is not directly administered by the Bureau of Indian Affairs.

Congress has extended the United States' liability under the FTCA, by way of Public Law 101–512, which "imposes liability upon the United States for the acts of tribal organizations and their employees administering a grant agreement pursuant to the TSCA." *Big Owl v. United States*, 961 F.Supp. 1304, 1307 (D.S.D.1997); *see* Pub.L. 101–512, Title II, § 314, Nov. 5, 1990, 104 Stat.1959, as amended by Pub.L. No. 103–138, Tit. III § 308, Nov. 11, 1993, 107 Stat. 1416 (codified at 25 U.S.C. § 450f, Historical and Statutory Notes). Specifically, Public Law 101–512 provides:

With respect to claims resulting from the performance of functions ... under a contract, grant agreement or cooperative agreement authorized by the ... [TSCA] ... an Indian tribe, tribal organization or Indian contractor is deemed hereafter to be part of the Bureau of Indian Affairs in the Department of the Interior ... while carrying out any such agreement and its employees are deemed part of the Bureau ... while acting in the scope of their employment in carrying out the contract or agree-

---

**3.** The Government contends the Plaintiff's claim should be dismissed for failure to set forth a waiver of governmental immunity. *See* Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss, pp. 4–5 (citing *Williams v. United States,* 50 F.3d 299, 304 (4th Cir.1995) ("A plaintiff bears the burden of showing a waiver of sovereign immunity.")). However, the complaint properly sets forth that "Defendants United States, Department of the Interior, and the Bureau of Indian Affairs through the Federal Tort Claims

Act, 28 U.S.C. Sections 2671, et seq., accept responsibility and liability for personal injury caused by the negligent or wrongful act or omission of their agents, officers, and employees acting within the scope of his or her federal employment." Complaint, ¶ 6. The Court is satisfied that such language acknowledges the waiver of immunity contained in 28 U.S.C. § 1346(b)(1). Therefore, dismissal for failure to set forth a waiver of governmental immunity is unwarranted.

ment: Provided, That ... any civil action or proceeding involving such claim brought hereafter against any tribe, tribal organization, Indian contractor or tribal employee covered by this provision shall be deemed to be an action against the United States and will be defended by the Attorney General and afforded the full protection and coverage of the [FTCA].

*Id.* In short, Grant School employees, such as Gustavson, are considered employees of the BIA and can be sued under the FTCA subject to the protections and immunities afforded government employees under the Act.

### 2. *"LAW OF THE PLACE"*

■ The alleged negligence took place in Fort Yates, North Dakota, within the exterior reservation boundaries of the Standing Rock Sioux Tribe. Since the FTCA's enactment in 1948, the "law of the place" has meant the law of the state where the negligent act or omission occurred. *See F.D.I.C. v. Meyer,* 510 U.S. 471, 487, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (stating "[W]e have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA.") (citing *Miree v. DeKalb County,* 433 U.S. 25, 29, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); *United States v. Muniz,* 374 U.S. 150, 153, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963); *Richards v. United States,* 369 U.S. 1, 6–7, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); *Rayonier Inc. v. United States,* 352 U.S. 315, 318, 77 S.Ct. 374, 1 L.Ed.2d 354 (1957)). This same approach has been used when the negligent act or omission occurred on Indian land located within a state. *See Champagne v. United States,* 40 F.3d 946 (8th Cir.1994); *Goodman v. United States,* 2 F.3d 291 (8th Cir.1993); *Red Lake Band of Chippewa Indians v. United States,* 936 F.2d 1320 (D.C.Cir.

1991); *Seyler v. United States,* 832 F.2d 120 (9th Cir.1987); *Bryant v. United States,* 565 F.2d 650 (10th Cir.1977). As a result, North Dakota law governs this dispute and is the "law of the place" under the FTCA.

### 3. *"ACTING WITHIN THE SCOPE OF HIS OFFICE OR EMPLOYMENT"*

■■ The Court has established that Gustavson is considered to be a federal employee for purposes of the FTCA. However, the FTCA "is a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees committed within the scope of their employment." *Audio Odyssey, Ltd. v. United States,* 255 F.3d 512, 516 (8th Cir.2001) (quoting *United States v. Orleans,* 425 U.S. 807, 813, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976)); *see also Primeaux v. United States,* 181 F.3d 876, 878 (8th Cir. 1999) (quoting *Gutierrez de Martinez v. Lamagno,* 515 U.S. 417, 423, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995) ("In determining the extent of the government's FTCA liability, 'scope of employment' sets the line.")). The scope of one's employment is generally determined by the law of the state where the tort occurred. *St. John v. United States,* 240 F.3d 671, 676 (8th Cir.2001) (citing *Brown v. Armstrong,* 949 F.2d 1007, 1012 n. 7 (8th Cir.1991)). "However, FTCA claims are strictly limited to a scope of employment analysis, regardless of state law doctrines of respondeat superior and apparent authority." *Id.* (citing *Primeaux,* 181 F.3d 876, 878).

■ Under North Dakota law, an employer may be liable for the tortious acts of its employees committed within the scope of employment. *See Nelson v. Gillette,* 571 N.W.2d 332, 334 (N.D.1997). However, an act not taken in furtherance

of the employer's business is not within the scope of employment. 571 N.W.2d 332, 335; *Kirchoffner v. United States,* 765 F.Supp. 598, 600 (D.N.D.1991). In determining the scope of employment for vicarious liability purposes, the Supreme Court of North Dakota has adopted the definition from the Restatement (Second) of Agency, § 228.

(1) Conduct of a servant is within the scope of employment if, but only if:

    (a) it is of the kind he is employed to perform;

    (b) it occurs substantially within the authorized time and space limits;

    (c) it is actuated, at least in part, by a purpose to serve the master, and

    (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Restatement (Second) of Agency (1958).

■ Mentz contends that there is sufficient evidence to suggest that "Gustavson's negligence took place within the period of employment, at a place where Gustavson reasonably was in performance of his duties, and while he was fulfilling those duties or engaged in doing something incidental thereto, or as sometimes stated, where he was engaged in the furtherance of the employer's business." The Court disagrees.

The undisputed evidence reveals that Gustavson was working on his snowmobile in an effort to finalize a sale with Tim Mentz. The work took place in the school shop on a Sunday morning and had no relationship to Gustavson's school duties and responsibilities. There were no students present for Gustavson to supervise nor did he have permission to use the shop for such purposes. The record also reveals that the mechanical work performed by Gustavson on November 26, 2000, is not the type of work he was employed to perform nor did such work occur within the authorized time limits of his employment. The Court finds that such conduct is outside the scope of Gustavson's school employment.

In addition, it is clear that Gustavson's actions were not actuated, at least in part, to serve the Grant School as required by the Restatement (Second) of Agency, § 228. "A primary inquiry under North Dakota law is whether the servant was performing any act in furtherance of his master's business at the time of the accident." *Kirchoffner v. United States,* 765 F.Supp. 598, 600 (D.N.D.1991) (quoting *Kohlman v. Hyland,* 54 N.D. 710, 210 N.W. 643, 646 (1926)). Conversely, an "act of an employee done to effect some independent purpose of his own is not within the scope of his employment." *United States v. Lushbough,* 200 F.2d 717, 720 (8th Cir.1952).

The record reveals that Gustavson was under an "extra-duty contract agreement" to work with students of the Grant School and "advise the Industrial Tech Club." *See* Defendant's Ex. Nos. 2–3. In that regard, Superintendent Terry Yellow Fat wrote the following letter to Kevin Mentz:

Mr. Gustavson had an extra-duty contract to work with students of the school in an Industrial Arts Club. I am aware that he met with high school students belonging to this club during the weekends so they could devote extra time to work on small engine repair and student automobiles. If other type of work was done, it was strictly on his own. Work and repairs for the general public is never authorized.

*See* Defendant's Ex. No. 3. This information is substantiated by the Agency Education Administrator for the Standing Rock Agency, Emma Jean Blue Earth. *See* Affidavit of Emma Jean Blue Earth.

> Although Mr. Gustavson was under an "extra-duty" contract agreement, he did not receive permission on the weekend in question to use the school shop. Mr. Gustavson was not allowed to work on the snowmobiles for the general public.

*Id.*

As previously noted, at the time of the accident Gustavson was repairing a snowmobile for Tim Mentz at the school shop on a Sunday morning. The snowmobile was not the school's property. Neither Kevin Mentz Tim Mentz were students at the Grant School. *See* Deposition of Kevin Mentz, p. 19. Gustavson was not performing any act in furtherance of the Grant School's business at the time of the accident. Even though the accident apparently happened near the school, the accident took place out of the scope of Gustavson's employment. There is no evidence to suggest that Gustavson's repairs were actuated, even in part, by a purpose to serve the Grant School. The mechanical work on the snowmobile was personal and self-serving in nature, and clearly designed to effectuate a sale to Tim Mentz. The Court finds that it is clear and undisputed from the record that Gustavson had "abandoned his master's business for his own purposes." *Kirchoffner v. United States,* 765 F.Supp. 598, 601 (D.N.D.1991). In applying North Dakota law, the Court also finds that Gustavson's actions do not fall within the scope of employment as articulated in Section 228 of the Restatement (Second) of Agency. As a result, the limited waiver of sovereign immunity in the FTCA does not apply and the complaint is subject to dismissal.[4]

---

4. As a result of this ruling, the Court need not address the application of North Dakota's re-

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Defendant's Motion to Dismiss. (Docket No. 18). Plaintiff's Request for Oral Argument is **DENIED** as moot. (Docket No. 23).

**IT IS SO ORDERED.**

creational use statute under Chapter 53–08 of the North Dakota Century Code.