**Robert F. NICHOLS, II and Rachel Nichols, Plaintiffs**

v.

**LAND TRANSPORT CORP. and Oscar Gonzalez, Defendant.**

**No. Civ. 98–227–B.**

United States District Court, D. Maine.

Nov. 9, 1999.

Graydon Stevens, R. Terrance Duddy, Kelly, Remmel & Zimmerman, Portland, ME, for plaintiffs.

Steven J. Mogul, Gross, Minsky, Mogul & Singal, Bangor, ME, for Land Transport Corp.

Carl F. Rella, Law Office of Carl F. Rella, Bangor, ME, for Oscar Gonzalez.

## ORDER [1]

BEAULIEU, United States Magistrate Judge.

This is an action brought by Plaintiffs against Oscar Gonzalez ("Gonzalez") and his former employer, Land Transport Corporation ("Land Transport"), for injuries suffered by Plaintiff Robert Nichols ("Nichols") as a result of a dispute with Gonzalez that culminated with Gonzalez stabbing Nichols. Before the Court is Land Transport's Motion for Summary Judgment on Plaintiffs' claim that Land Transport is vicariously liable for the Gonzalez's actions.[2] For reasons stated below, the Court GRANTS Land Transport's Motion.

### Summary Judgment Standard

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court views the record on summary judgment in the light most favorable to the nonmovant. *Levy v. FDIC*, 7 F.3d 1054, 1056 (1st Cir.1993). "A trialworthy issue exists if the evidence is such that there is a factual controversy pertaining to an issue that may affect the outcome of the litigation under the governing law, and the evidence is 'sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side.'" *De–Jesus–Adorno v. Browning Ferris Ind. Of Puerto Rico*, 160 F.3d 839, 841–42 (1st Cir.1998) (quoting *National Amusements v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir.1995)).

### Facts

Land Transport employed Oscar Gonzalez to operate a Land Transport tractor-trailer rig from September 15, 1993 to November 11, 1996. On November 11, 1996, Nichols and Gonzalez were driving west on Route 9 toward Brewer, Maine. Gonzalez tried several times to pass Nichols in no-passing zones. Angered by Gonzalez's driving, Nichols made an obscene gesture to Gonzalez on two occasions. Thereafter, Gonzalez began to tailgate Nichols for several miles and continued to try and pass him.

The two trucks then stopped at a traffic light. Nichols saw Gonzalez get out of his cab and Nichols did the same. Upon approaching Gonzalez, Nichols attacked Gonzalez with a rubber-coated chain linked cable. Nichols then grabbed Gonzalez and they fell to the ground. During the scuffle, Gonzalez got up, brandished a knife, and stabbed Nichols.

### Discussion

■ Land Transport contends that the facts asserted by Plaintiffs are not sufficient to impose vicarious liability on Land Transport. Maine applies the provisions of the *Restatement (Second) of Agency* to determine the limits of imposing vicarious liability on an employer. *McLain v. Training and Development Corp.*, 572 A.2d 494, 497 (Me.1990). The Restatement provides that a master may be vicariously liable when the agent's conduct was within the scope of employment, *Restatement (Second) of Agency* § 228 (1958), and also provides that in certain situations liability attaches to the master even when the agent acts outside the scope of employment. *Id.* § 219 We address each possibility below.

### A. Scope of Employment

The general contours regarding what is within the scope of employment reads as follows:

---

1. Pursuant to 28 U.S.C. 636(c) (1993), the parties have consented to proceed before the United States Magistrate Judge.

2. In his Response to Defendant's Motion, Plaintiff withdrew the negligence counts (Count II and III) against Land Transport.

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated to the purpose of the master.

*Restatement (Second) of Agency* § 228. This general rule regarding the scope of employment is followed by further sections and commentary delineating when, and when not, an agent's conduct is within the scope of employment. As Judge Carter succinctly explained:

Section 230 of the *Restatement (Second) of Agency* clarifies that "an act, although forbidden, or done in a forbidden manner, may be within the scope of employment." Similarly, section 231 of the Restatement (Second) states that "an act may be within the scope of employment although consciously criminal or tortuous." Finally, "acts relating to work and done in the workplace during hours are within the scope, see id. §§ 232–33, while intentional wrongdoing is outside it, *see id.* § 231, and the motivation of the employee (to serve the master's interests or his own) is often an important element, see id. §§ 235–36." *Lyons v. Brown,* 158 F.3d 605, 609 (1st Cir.1998). Thus, actions that are done with a private, rather than a work-related, purpose to commit wrongdoing are outside of the scope of employment and render the motivation of the employee, in performing the act at issue a crucial, immunity-related fact.

*Bergeron v. Henderson,* 47 F.Supp.2d 61, 65–66 (D.Me.1999).

■ The second requirement in Section 228 requires that the conduct of the agent occur within the authorized time and space limits. This requirement relates directly to the foreseeability of the agent's act, and establishes the simple principle that the master should not be held responsible for the agent's conduct when that conduct is outside the contours of the employment relationship. Plaintiff cites a number of cases for the proposition that Gonzalez's actions could be found to be within the scope of employment. However, as Land Transport correctly points out, in those cases cited by Plaintiffs the assault occurred within the contours of the employment relationship. *Roberson v. Bethlehem Steel Corp.,* 912 F.2d 184, 186–188 (7th Cir.1990) (employee-foreman assaults plaintiff-customer at foreman's place of business); *B.F. Goodrich Tire Co. v. Lyster,* 328 F.2d 411, 416–417 (5th Cir.1964) (employee-manager assaults customer at employee's place of business); *Hobart v. Cavanaugh,* 353 Mass. 51, 228 N.E.2d 439 (1967) (employee-truck driver assaults gas attendant where employee was designated to pick up the truck).

Unlike the cases cited above, the Court is satisfied that when Gonzalez left his cab to confront Nichols he acted outside the physical space in which he was authorized to be as an agent for Land Transport. Gonzalez was not authorized to leave his cab for this purpose, and by doing so it is clear he was motivated to serve his personal interests, rather than those of Land Transport.

Another pertinent section of the Restatement for our purposes is section 231. That section states that even though an agent's act may be criminal, it could still be within the scope of employment. *Restatement (Second) of Agency* § 231. The comment of the section expands upon the general principle by stating the following:

The fact that the servant intends a crime, especially if the crime is of some

magnitude, is considered in determining whether or not the act is within the employment, since the master is not responsible for acts which are clearly inappropriate or unforeseeable in the accomplishment of the authorized conduct. The master can reasonably anticipate that servants may commit minor crimes in the prosecution of the business, but serious crimes are not only unexpectable but in general are in nature different from what servants in a lawful occupation are expected to do.

*Restatement (Second) of Agency* § 231, cmt. (a).

The drafters of the Restatement provide two examples to illustrate when vicarious liability may and may not attach under the section. The drafters state that a chauffeur, who, on an errand for his master, unlawfully drives on the wrong side of the road to avoid a rough spot, acts within the scope of employment. *Restatement (Second) of Agency* § 231, cmt. (a), illus. 1. Whereas, a servant who, although knowing that an ordinance against the use of dynamite near the highway exists, nevertheless uses dynamite to clear rock, acts outside the scope of employment if blasting is an abnormal and unexpected method for which the servant was employed. *Restatement (Second) of Agency* § 231, cmt. (a), illus. 2.

■ Here, Gonzalez's actions, namely brandishing a knife and stabbing Nichols, was a serious crime that was "clearly inappropriate or unforeseeable conduct" motivated by his personal animus toward Nichols. Like the servant who used dynamite to clear rock, leaving his cab and brandishing a knife to stab a fellow truck driver is an abnormal and unexpected occurrence for which he was not employed. For the reasons stated above, the Court is satisfied that Gonzalez's actions were outside the scope of employment.

## B. Vicarious Liability Outside the Scope of Employment

■ In its Motion, Land Transport addresses whether it could be held vicarious-ly liable even though Gonzalez's actions were outside the scope of employment. The Plaintiffs did not address the issue in their Response. Section 219(d) of the Restatement states that a master could be liable for the actions of the agent even when the agent acts outside the scope of employment when the agent "was aided in accomplishing the tort by the existence of the agency relation."

The First Circuit discussed the application of the section in *Costos v. Coconut Island Corp.*, 137 F.3d 46 (1st Cir.1998). That case involved whether the inns' owner and corporate manager could be vicariously liable for the rape of one of its customers by the manager of the inn. In that opinion the court observed that while Maine has not directly addressed the scope of the section, some case law provides guidance as to its scope. Citing *Gary v. Long*, 59 F.3d 1391, 1397 (D.C.Cir.1995), the court stated "that [the *Gary*] court referred to the commentary of the Restatement: that the employer is liable only if the tort 'Was accomplished by an instrumentality, or through conduct associated with the agency status.'" *Costos*, 137 F.3d at 49. The court concluded that the inn was vicariously liable because the manager of the inn obtained the key to the victim's room and knew where to find the victim based on his agency relationship with the inn's owner and corporate manager. *Id.*

■ Here, Land Transport did not provide Gonzalez with the instrumentality, the knife, that aided him in the commission of the tort. Nor could the court conclude that vicarious liability attaches through conduct associated with his status as Land Transport's agent. The drafters of the Restatement provided two examples of when liability could attach under the section through the existence of the agency relationship. The examples include when a telegraph operator sends a false message purporting to come from another, or when a store manager cheats customers. *Re-*

*statement (Second) of Agency* § 219, cmt. (e). In both examples, it is through the agency status that the agents, the telegraph operator and the store manager, were aided in committing the wrongdoing. Here, that is not the case. Gonzalez stepped outside his status as agent when he left the cab to confront Nichols.

### Conclusion

For the reasons stated above, Land Transport's Motion for Summary Judgment is GRANTED.

*SO ORDERED.*