In re SERVICESENSE.COM,
INC., Debtor.

Craig R. Jalbert, Liquidating Su-
pervisor of Servicesense.com,
Inc. Plaintiff,

v.

C. David Chase, Alan R. Stone, David E.
Dryer, Gregory L White, Chappell
White LLP, Seyfarth Shaw and Chris-
topher J. McKeown, Defendants.

Bankruptcy No. 01–16539–WCH.
Adversary No. 02–1429.

United States Bankruptcy Court,
D. Massachusetts,
Eastern Division.

Feb. 22, 2006.

Howard P. Blatchford, Jr., Jager Smith P.C. Boston, MA, for the Liquidating Supervisor.

John F. Drew, Burns & Levinson LLP Boston, MA, for Chase and Stone.

**MEMORANDUM OF DECISION ON MOTION OF PLAINTIFF CRAIG R. JALBERT, LIQUIDATING SUPERVISOR, FOR JUDGMENT ON THE PLEADINGS ON COUNTS I AND III OF THE COUNTERCLAIM OF DEFENDANTS C. DAVID CHASE AND ALAN R. STONE AND TO STRIKE THEIR THIRD AFFIRMATIVE DEFENSE**

WILLIAM C. HILLMAN, Bankruptcy Judge.

**I. INTRODUCTION**

Craig R. Jalbert, the Liquidating Supervisor of Servicesense.com (the "Liquidat-

ing Supervisor") moves to dismiss the counterclaims that C. David Chase ("Chase") and Alan R. Stone ("Stone") asserted against him on the grounds that they have failed to state a claim upon which relief can be granted (the "Motion"). The counterclaims assert violations of state and federal securities law. Chase and Stone objected to the Motion and after a hearing, I took the matter under advisement. For the reasons set forth below, I will enter an order granting the Motion.

**II. BACKGROUND**

The facts necessary to decide the Motion are not in dispute and I accept all of Chase and Stone's well-pleaded facts as true.[1] The Liquidating Supervisor became the liquidating supervisor under the Joint Liquidating Plan of Reorganization which I confirmed on April 10, 2002. Servisense.com, Inc. (the "Debtor") had filed for relief under Chapter 11.

Prior to the filing, on October 31, 2000, the Debtor entered into an agreement with various investors entitled Series A Convertible Preferred Stock Warrant Purchase Agreement. ( the "Agreement"). Pursuant to the Agreement, C. David Chase ("Chase") issued to the Debtor a promissory note in the amount of $2,050,000 and Alan R. Stone ("Stone") issued to the Debtor a promissory note in the amount of $850,000. With respect to the topic of brokers, the Agreement provided as follows:

> Brokers. Except as set forth on Exhibit D hereto, the Company and each Purchaser (i) represents and warrants to the other parties hereto that he, she or it has retained no finder or broker in connection with the transaction contem-

---

1. *See Pasdon v. City of Peabody*, 417 F.3d 225, 226 (1st Cir.2005).

plated by this Agreement, and (ii) will indemnify and save the other party harmless from and against any and all claims, liabilities or obligations with respect to brokerage or finder's fees or commissions, or similar fees in connection with the transactions contemplated by this Agreement asserted by any person on the basis of any statement or representation alleged to have been made by such indemnifying party.

Agreement, Section 9.5.[2]

Over the next six months, Chase paid the Debtor $1,200,000 and the Debtor issued 846,153 shares of Series A Preferred Stock to Chase, with warrants to purchase additional shares. Over that same period of time, Stone paid the Debtor $900,000 and the Debtor issued to Stone 384,164 of the same shares along with warrants to purchase more.

On May 18, 2001, the Debtor cancelled the promissory notes of Chase and Stone and Chase and Stone surrendered 527,125 and 119,028 shares respectively of Series A Preferred Stock. Chase and Stone then loaned the Debtor $100,000 and $25,000, respectively and received in return warrants for securities and security interests in the Debtor's assets, the financing statements for which were filed the following month. Chase and Stone also signed on that date a Mutual Release and Settlement Agreement pursuant to which the Debtor released Chase and Stone from any liabilities arising from any investments they made with the Debtor.

During the two transactions, Chappell White LLP represented the Debtor. The primary attorneys with whom they dealt were David E. Dryer and Gregory L. White. Chase and Stone had enjoyed a long standing relationship with the attorneys and the firm. Chappell White LLP, Dryer and White were not registered as broker-dealers in Massachusetts.

The Liquidating Supervisor filed a lawsuit against, *inter alia,* Chase and Stone. In his complaint, he asserts that the creation of the security interests, which were perfected by the filing of the financing statement within 90 days of the filing of the petition, constitute avoidable preferences pursuant to 11 U.S.C. § 547(b). The Liquidating Supervisor also seeks to recharacterize Chase and Stone's obligations to the Debtor as equity investments and to have their claims subordinated to the Debtor's secured, priority and general unsecured creditors. The Liquidating Supervisor claims that the settlement agreements between the Debtor and Chase and the Debtor and Stone are fraudulent conveyances under 11 U.S.C. §§ 548(a) and 544(b). Lastly, the Liquidating Supervisor seeks to recover the balance of the promissory notes from Chase and Stone.

In addition to their general denial of the complaint, Chase and Stone also filed counterclaims and affirmative defenses. In Count I, Chase and Stone allege that Dryer, White and Chappell White convinced Chase and Stone to purchase securities while they were unregistered broker dealers in violation Mass. Gen. Laws ch. 110A § 410(a). Under the statute, they contend, the Liquidating Supervisor is liable for any amounts they may be required to pay. In Count III, Chase and Stone contend that the securities were offered and sold to them in violation of 15 U.S.C. § 78cc(b). In their third affirmative defense, Chase and Stone contend that the Liquidating Supervisor's claims are barred under the forgoing statutes.[3]

---

2. Exhibit D to the Agreement does not contain any exception relevant to this passage.

3. The Liquidating Supervisor has amended the complaint but the amendments are not relevant to the matter before the Court.

The Liquidating Supervisor moved for judgment on Counts I and III of the counterclaims and to strike the third affirmative defense of Chase and Stone. I will consider the matters in turn.

## III. ANALYSIS

### A. Motion for Judgment on Counterclaims I and III

#### i. The Standard—Fed. R. Civ. P. 12(c)

The Liquidating Supervisor has moved to for judgment on counterclaim Counts I and III pursuant to Fed.R.Civ.P. 12(c) as adopted by Fed. R. Bankr.P. 7012 which allows a party to move for judgment on the pleadings. In considering the Motion, I must give to Chase and Stone the benefit of all reasonable inferences and I must deny the Motion unless it appears that Chase and Stone can prove no set of facts in support of their claims that would entitle them to the relief they seek. *See Pasdon v. City of Peabody*, 417 F.3d 225, 226 (1st Cir.2005) ("The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as that for deciding a Rule 12(b)(6) motion ... The motion should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'") (citations omitted). *See also Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Great specificity is ordinarily not required to survive a Rule 12(b)(6) motion. It is enough for Chase and Stone to sketch an actionable claim by means of a generalized statement of facts from which the Liquidating Supervisor will be able to frame a responsive pleading. *Garita Hotel Limited Partnership v.*

*Ponce Federal Bank,* 958 F.2d 15, 17 (1st Cir.1992).

#### ii. Whether the Language of the Stock Purchase Agreement Prevents Chase and Stone from Asserting that Dryer and White Were Unlicensed Broker–Dealers

█ The Liquidating Supervisor first asserts that Chase and Stone are estopped from arguing that Dryer and White were unlicensed broker-dealers based upon the language in the Agreement regarding the lack of brokers representing the parties. Chase and Stone contend that the provisions of the Agreement are not dispositive. The language, they claim, was designed solely to prevent an unknown third party from subsequently claiming fees as a broker. As evidence, they point to the language that contains mutual indemnity obligations. The parties did not argue the issue at the hearing.

The language of the subsection refers in one sentence to retaining a broker and indemnification for broker fees. The natural reading of the clause is as Chase and Stone describe. The subsection is there to address any claims for fees that might arise. I will not dismiss the counterclaims based upon the language in this subsection.

#### iii. Whether Count I of the Counterclaim Fails to State a Claim Under Section 410(a) of Mass. Gen. Laws ch 110A.

█ Pursuant to Mass. Gen. Laws ch 110A, § 410(a), "[a]ny person who (1) offers or sells a security in violation of section 201(a) ... (2) ... is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at six per cent per year from the date of payment, costs, and reasonable attorneys' fees ...".[4]

---

4. In Counterclaim I, Stone and Chase seek relief under subsection (a)(2). The allegations in the complaint and, indeed, the discussion in the Objection demonstrate that they are

Mass. Gen. Laws ch. 110A, § 201(a) provides that "[i]t is unlawful for any person to transact business in this commonwealth as a broker-dealer or agent unless he is registered under this chapter." "Broker-dealer", in turn, is defined as "any person engaged in the business of effecting transactions in securities for the account of others or for his own account." Mass. Gen. Laws ch. 110A, § 402(c). "Broker-dealer", however, "shall not include: (1) an agent; (2) an issuer . . . ." *Id.*[5]

Based upon the forgoing, the Liquidating Supervisor contends that the Debtor cannot be liable under § 410 because the Debtor (i) is not broker-dealer or agent as those terms are defined in the statute and (ii) is excepted from the definition of broker-dealer as an issuer. Accordingly, he seeks dismissal of this counterclaim because the counterclaim fails to state a claim for relief.

Chase and Stone counter that the Liquidating Supervisor is attempting to construe the statute too narrowly. They contend that because this is largely unchartered water, I must look at the purpose behind the statute and broadly interpret it in order to achieve its intent. In support, they cite to *Adams v. Hyannis Harborview. Inc.,* 838 F.Supp. 676 (D.Mass.1993) and *Giordano v. Auditore,* 355 Mass. 254, 244 N.E.2d 555 (1969). They placed great emphasis on the fact they had no contract with the attorneys rather their contract is with the Debtor.

As part of their argument, Chase and Stone assert that I must follow the plain meaning of the statute which should be ascertained from all of its words. Notwithstanding this argument, Chase and Stone then ask that I extract the words "recover the consideration" from the statute and interpret the phrase to mean that whoever receives the consideration can be subject to civil liabilities. Any other interpretation, they contend, would be narrow-minded and fail to give effect to all of the words of the statute.

Chase and Stone would be correct if the statute read "recover the consideration from whomever was the recipient". I must, however, give full effect to the applicable statutes and all of the language contained therein.[6] Accordingly, I must look at the prefatory language which requires that I examine not just the recipient but underlying violation. In this case, the underlying violation had to involve an unlicensed broker-dealer. The plain language of the statute excepts the issuer from the definition of broker-dealer. If there is no broker-dealer, there is no violation of § 201 and therefore no liabilities under § 410. Despite Chase and Stone's representations about the purpose of the statute, the plain meaning does not permit me to follow their interpretation.

Chase and Stone also claim that the language "any person who offers or sells" must include the Debtor because a person is defined under the statute to include a corporation. They disregard, however, the modifying language that the person selling must be doing so in violation of, *inter alia,* subsection 201. It is not just the act of

seeking liabilities based upon a violation of (a)(1). The Liquidating Supervisor addressed this in footnote 4 of his memorandum in support of the Motion. The confusion appears to stem from the fact that the violation is described in subsection (a)(1) but the liability for the infractions of subsections (1) and (2) are set forth solely in subsection (2). Taking the documents together, I find that Chase and Stone are seeking to hold the Liquidating Supervisor liable for a violation of subsection (a)(1) of § 410.

5. Chase and Stone do not allege that the Debtor was an agent.

6. *See e.g. Costos v. Coconut Island,* 137 F.3d 46, 49 (1st Cir.1998).

selling that would hold one liable under the statute.

The cases upon which Chase and Stone rely are not helpful. In *Adams v. Hyannis Harborview, Inc.* 838 F.Supp. 676 (D.Mass.1993), owners of newly purchased condominium units sued on the grounds that the units should have been registered as securities. The court ruled that the units were investment contracts subject to applicable securities laws. 838 F.Supp. at 686. In determining who was a seller under Mass. Gen. Laws ch. 110A § 410(a)(2), the court cast a wide net over the players involved in the marketing and sales. The subsection of the statute, however, refers to any person who "offers or sells by means of any untrue statement of a material fact ...". The subsection upon which Chase and Stone seek relief in the counterclaim is (a)(1) which refers to a person who sells but one who sells "in violation of section 201(a)". That subsection does not simply rest on an analysis of one who offers or sells. Accordingly, how the court interpreted who the seller was in *Adams* is not relevant.

In *Giordano v. Auditore*, 355 Mass. 254, 244 N.E.2d 555 (1969), the court considered whether the defendant could be considered a seller when he acted as a sales-man for purposes of a precursor statute. The court held he could because the statute must be broadly read. In that case, however, there were no specific statutes excluding the defendant. Moreover, the court spoke of applying a definition broadly unless expressly exempted. 355 Mass. at 256, 244 N.E.2d 555.

Because no action can lie against the Debtor under the plain language of Mass. Gen. Laws 110A, § 410(a)(1), I will enter an order granting the Liquidating Supervisor's request to dismiss Count I of the Counterclaims.

iv. Whether Count III Fails to State a Claim Under Section 78cc(b) of the Exchange Act.

■ Chase and Stone contend that by using instruments of interstate commerce while acting as unregistered broker dealers, Dryer, White and Chappell White violated 15 U.S.C. § 78o(a)(1).[7] They therefore contend that the purchase of the securities can be avoided and they can receive a return of the money they paid to the Debtor under the promissory notes and reimbursement of the costs they incurred for defending this lawsuit pursuant to 15 U.S.C. § 78cc(b).[8]

---

7. Subsection (a)(1) of the statute provides:

(a) Registration of all persons utilizing exchange facilities to effect transactions; exemptions

(1) It shall be unlawful for any broker or dealer which is either a person other than a natural person or a natural person not associated with a broker or dealer which is a person other than a natural person (other than such a broker or dealer whose business is exclusively intrastate and who does not make use of any facility of a national securities exchange) to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) unless such broker or dealer is registered in accordance with subsection (b) of this section.

8. Subsection (b) of the statute provides:

(b) Contract provisions in violation of chapter Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract (including any contract for listing a security on an exchange) heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such con-

The Liquidating Supervisor seeks to dismiss this counterclaim contending that Chase and Stone cannot meet their burden under this statute. According to the Liquidating Supervisor, to prevail in an action under this statute, Chase and Stone must show that (1) they were in privity with the Debtor; (2) they are in the kind of class the statute was designed to help; and (3) the contract involved prohibited transaction.[9] The Liquidating Supervisor contends that notwithstanding the merits of the first two requirements,[10] Chase and Stone cannot establish the third as the transaction was not a prohibited transaction. That is, although the actions of Dryer, White and Chappell White might have violated state and federal securities law, there is no nexus between that action and the Agreement which does not violate the applicable securities laws in any way.

Chase and Stone disagree. They contend that I must look beyond the four corners of the Agreement in order to enforce the broad remedial purpose of the applicable securities laws. In support, they cite to *Regional Properties* in which

the court explained that "[plaintiffs] sought to avoid certain contracts, perfectly lawful on their face the performance of which by [defendant] Financial resulted in a violation of the Act. That these contracts, under different circumstances, could have been performed without violating the Act is immaterial." 678 F.2d at 561.

I am, however, persuaded by the reasoning more recently offered by the Third Circuit. *See GFL Advantage Fund, Ltd. v. Colkitt,* 272 F.3d 189 (3rd Cir.2001), *cert. denied,* 536 U.S. 923, 122 S.Ct. 2588, 153 L.Ed.2d 778 (2002). In it, the court summed up many of the small number of cases which have addressed this issue and reconciled them as follows:

> Although the court of appeals in *Regional Properties* rescinded the contracts therein and explicitly rejected *Drasner's* [*v. Thomson McKinnon Securities, Inc.*], 433 F.Supp. 485, 488-89 (S.D.N.Y. 1977), narrow reading of Section 29(b), its opinion is nevertheless consistent with the outcomes in *Drasner, Slomiak* [*v. Bear Stearns & Co.,* 597 F.Supp. 676,

tract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision, rule, or regulation: *Provided,* (A) That no contract shall be void by reason of this subsection because of any violation of any rule or regulation prescribed pursuant to paragraph (3) of subsection (c) of section 78o of this title, and (B) that no contract shall be deemed to be void by reason of this subsection in any action maintained in reliance upon this subsection, by any person to or for whom any broker or dealer sells, or from or for whom any broker or dealer purchases, a security in violation of any rule or regulation prescribed pursuant to paragraph (1) or (2) of subsection (c) of section 78o of this title, unless such action is brought within one year after the discovery that such sale or purchase involves such violation and within three years

after such violation. The Commission may, in a rule or regulation prescribed pursuant to such paragraph (2) of such section 78o(c) of this title, designate such rule or regulation, or portion thereof, as a rule or regulation, or portion thereof, a contract in violation of which shall not be void by reason of this subsection.

**9.** The parties do not dispute this standard. *See e.g. Regional Prop., Inc. v. Finan. and Real Estate Consulting Co.* 678 F.2d 552, 559 (5th Cir.1982).

**10.** In a footnote, the Liquidating Supervisor suggests that Chase and Stone may not be able to prevail against the argument that Dryer, White and Chappell White cannot have violated § 78o(a)(1) because they are exempt based upon their exclusively intrastate business. He does not urge such a finding upon the Court, however, as it involves findings based upon evidence outside of the pleadings.

677 (S.D.N.Y.1984)], and *Zerman [v. Jacobs,* 510 F.Supp. 132, 135 (S.D.N.Y. 1981)], . In particular, the violations of the Exchange Act alleged in *Drasner, Slomiak,* and *Zerman* were "collateral or tangential to the contract between the parties," whereas the violation alleged in *Regional Properties* was "inseparable from the performance of the contract: that plaintiffs were attempting to avoid." ... The parties could—and did perform the contracts at issue in *Drasner, Slomiak* and *Zerman* without committing any violations of the Exchange Act, but the broker in *Regional Properties* could not carry out his obligations under the agreements without violating the Exchange Act, for performance of the agreements entailed selling partnership interests, which the broker lawfully could not do due to his failure to register as a broker-dealer....

272 F.3d at 202.

With respect to the case before it, the Third Circuit ruled

> In the end, GFL's alleged unlawful activity (i.e. its short sales) is too attenuated from the parties' valid, lawful contracts (i.e. the National Medical and EquiMed notes) or GFL's performance thereunder. Therefore, we conclude that the notes were neither made nor performed in violation of any federal securities laws as is required for recision under Section 29(b).

*Id.*

In this case, there is no allegation that the Agreement itself was unlawful. Having adopted the Third Circuit's reasoning, I must conclude that in Count III of the counterclaims, Chase and Stone do not state a cause of action for which relief can be granted.

### B. Motion to Strike Affirmative Defense

Fed.R.Civ.P. 12(f), as adopted by Fed. R. Bankr.P. 7012, provides that "a court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." In the Motion, the Liquidating Supervisor seeks to strike Chase and Stone's third affirmative defense as it is predicated on their right to rescind. Because I have ruled that those statutes cannot bring them the relief they seek, I will enter an order granting the request to strike.

## IV. CONCLUSION

For the forgoing reasons, I will enter an order granting the Motion.